DON SPRINGMEYER, ESQ. (SBN 1021)
CHRISTOPHER W. MIXSON, ESQ. (SBN 10685)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Phone: (702) 341-5200 / Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
cmixson@wrslawyers.com

ALLISON N. MELTON (SBC 45088), *pro hac vice application to be submitted*
**CENTER FOR BIOLOGICAL DIVERSITY**
P.O. Box 3024
Crested Butte, CO 81224
Phone: (970) 309-2008
amelton@biologicaldiversity.org

*Attorneys for Plaintiff (additional counsel on signature page)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; | Case No.: |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| DAVID BERNHARDT, in his official capacity as Secretary of the U.S. Department of Interior; AURELIA SKIPWITH, in her official capacity as Director of the U.S. Fish and Wildlife Service; U.S. FISH AND WILDLIFE SERVICE; DOUGLAS FURTADO, in his official capacity as Bureau of Land Management Battle Mountain District Manager; and U.S. BUREAU OF LAND MANAGEMENT; | |
| Defendants. | |

Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Plaintiff" of the "Center"), by and through its attorneys of record, hereby complains and alleges as follows:

/ / /

# INTRODUCTION

1.      Plaintiff challenges the unreasonable delay, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), of Defendants David Bernhardt, in his official capacity as Secretary of the U.S. Department of Interior, and Aurelia Skipwith, in her official capacity as Director of U.S. Fish and Wildlife Service (collectively hereinafter as the "Service"), to conclude the Center's October 7, 2019 Petition under the APA, 5 U.S.C. § 553(e), 555(b), renewed and resubmitted on September 17, 2020, requesting the Service utilize its authority under the Endangered Species Act, and immediately protect a rare endemic wildflower, Tiehm's buckwheat (*Eriogonum tiehmii* Reveal, Polygonaceae), as an "endangered" or "threatened" species under the ESA.  16 U.S.C. § 1533(b)(7).  The Service's failure to respond to Plaintiff's petition under the APA and take action immediately to protect Tiehm's buckwheat under the ESA is patently unreasonable in light of myriad threats to the species compounded by the alarming destruction of approximately 40 percent of the wildflower's total population over the last weeks or months.

2.      In the alternative, the Center seeks declaratory relief and vacatur of any determination by the Service concluding not to emergency list the Tiehm's buckwheat, as the Center's petition requested under the APA, as patently arbitrary, capricious, and an abuse of discretion.  5 U.S.C. § 706(2)(A).

3.      Because the wildflower's total, and now drastically reduced, population is relegated to just six areas on federal public lands managed by the U.S. Bureau of Land Management ("BLM"), the Center also challenges Douglas Furtado, in his official capacity as the Battle Mountain District Field Manager, for BLM's unreasonable delay, 5 U.S.C. § 706(1), in concluding the Center's September 17, 2020 petition, *id.* § 555(b), requesting BLM utilize all available authorities and immediately protect the wildflower in accordance with the protection mandate found in the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. § 1732(b), and BLM policies for sensitive species.

///

4.     In the alternative, the Center seeks declaratory relief and vacatur of any determination by BLM in concluding, 5 U.S.C. § 555(b), not to protect the wildflower in accordance with FLMPA and BLM policies, as the Center's petition requested, as arbitrary, capricious, an abuse of discretion. *Id*. § 706(2)(A).

5.     Tiehm's buckwheat is a rare, critically endangered wildflower characterized by its pale yellow-to-reddish-orange blooms, as depicted in the photograph below.  Tiehm's buckwheat is a critically endangered plant, found only on federal lands in western Nevada in the Silver Peak Range within the BLM's Tonopah Planning Area and Esmeralda County.  The species survives in an extremely limited range of just 10 acres of public land in Nevada.  Before the recent destruction of plants in about 40 percent of the species' entire range, Tiehm's buckwheat was estimated to have a global population of 43,921 individuals.  The loss of 40 percent of the population would leave about 26,400 individual surviving plants.



*Above: blooming Tiehm's buckwheat*

6.      The Center seeks declaratory relief that the Service violated the APA and an order directing the Service to issue a substantive response by a date certain to the Center's request to emergency list the Tiehm's buckwheat to protect the wildflower from any further harm.  The Center also seeks an order declaring BLM violated the APA, FLPMA, and its sensitive species policies and other appropriate injunctive relief, including an order directing BLM to respond to the Center's petition, to take immediate action to protect the Tiehm's buckwheat from further destruction, and/or to mitigate and prevent further harm to the species pursuant to FLPMA and BLM policies.

## JURISDICTION AND VENUE

7.      Jurisdiction in this Court is proper under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the APA, 5 U.S.C. §§ 551-706; the ESA, 16 U.S.C. §§ 1531-1544; and the FLPMA, 43 U.S.C. §§ 1701-1748(d).

8.      Venue is proper pursuant to 28 U.S.C. § 1391(e) because Defendants have offices in this judicial district, a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this judicial district, and a substantial part of the property that is the subject of this case is situated in this judicial district.

9.      Venue is proper in the Southern Division of this District, as the challenge involves federal land and resources in Esmeralda County.  L.R. 1-6, 8-1.

10.      An actual justiciable controversy exists between Plaintiff and Defendants.  The requested relief is proper under 28 U.S.C. §§ 2201-02, and 5 U.S.C. §§ 553, 555, and 706.  The challenged agency inaction and/or final actions are subject to this Court's review under 5 U.S.C. §§ 702, 704, and/or 706.

## PARTIES

11.      The Center is a non-profit corporation headquartered in Tucson, Arizona, with offices and staff in many states, including Nevada.  The Center works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction.  The

Center is actively involved in protecting threatened and endangered species, and their habitats. The Center has over 81,000 members throughout the United States and the world.

12.     The Center brings this action on its own behalf, and on behalf of its members. The Center has members who use and enjoy the federal public lands on which and nearby where Tiehm's buckwheat are found that are managed by the BLM within the Tonopah Planning Area.

13.     The Center has members who use and enjoy the Tonopah Planning Area to study, observe, photograph, and enjoy the Tiehm's buckwheat in its extremely small 10-acre habitat. The Center's members derive vocational, scientific, and recreational benefits when visiting Tiehm's buckwheat, including scientific and educational benefits, aesthetic enjoyment, physical exercise, photography, and spiritual renewal.  The Center's members derive scientific, educational, health, recreational, inspirational, religious and aesthetic benefits from their activities when visiting and enjoying this imperiled wildflower.  The Center and its members have an interest in the persistence and conservation of the Tiehm's buckwheat for scientific, aesthetic, ecologic, inspiration, and other purposes.

14.     The Center has a program dedicated to protecting Nevada's numerous rare species, beautiful lands, and life-sustaining groundwater.  The Nevada state director actively works to protect and obtain protections for imperiled species, like the Tiehm's buckwheat.

15.     The Center and its members are actively participating in efforts to conserve and obtain Federal and State Endangered Species Act protection for this imperiled wildflower.  The Center and its members do this through actions like submitting petitions to Federal and State agencies requesting such additional legal protection, participating in public comment opportunities, and by visiting and monitoring on-the-ground conditions of the species and its limited habitat.  The Center has a campaign seeking to help and conserve the Tiehm's buckwheat, which includes the objective of securing Federal and State Endangered Species Act protection for the wildflower.

16.     The Center's members intend to continue to regularly use and enjoy the Tonopah Planning Area and continue their use and enjoyment that is tied to the Tiehm's buckwheat, as

discussed above, frequently and on an ongoing basis in the future, including throughout this fall and winter.  At least one member of the Center has a concrete and specific plan to hike, study, monitor, and take photographs of the imperiled Tiehm's buckwheat throughout the fall and winter of 2020 to 2021 and during peak bloom season, at the end of May and early June 2021.

17.     The Center and its members have well-established interests in the conservation of the Tiehm's buckwheat.  The scientific, educational, health, recreational, inspirational, and aesthetic interests and benefits of the Center and its members have been and will continue to be adversely affected and irreparably injured if the Service continues to ignore or deny the Center's APA petitions and/or fails to immediately list the Tiehm's buckwheat pursuant to its emergency listing powers under the ESA, and/or if BLM continues its violations of APA and FLPMA and its sensitive species policies.  These are actual, concrete injuries caused by the Service's and BLM's violations of the APA, ESA, and FLPMA.  The Center and its members' injuries will be redressed by the relief sought.

18.     Defendant David Bernhardt is the Secretary of the Interior.  As the Secretary of the Interior he has the ultimate responsibility to administer and implement the ESA, and to comply with all other federal laws applicable to the U.S. Department of the Interior, including the FLPMA.  Secretary Bernhardt is sued in his official capacity.

19.     Defendant Aurelia Skipwith is the Director of the U.S. Fish and Wildlife Service, a federal agency within the Department of the Interior.  The Secretary of the Interior has delegated his authority to administer the Endangered Species Act to Service for non-marine wildlife and plants.  50 C.F.R. § 402.01(b).  Director Skipwith is sued in her official capacity.

20.     United States Fish and Wildlife Service is an agency within the United States Department of the Interior.  The Service and its officers are responsible for administering the ESA, including its mandate for listing and emergency listing of species as threatened or endangered.

21.     Defendant Doug Furtado is the District Manager of the BLM Battle Mountain District.  As district manager, he is responsible for administering public lands and resources

within this district, which contains the Silver Peak Range where the only known population of Tiehm's buckwheat in the world lives.

22.    Defendant United States Bureau of Land Management is an agency within the United States Department of the Interior.  The BLM and its officers are responsible for the lawful management of the federal lands within the Tonopah Planning Area, which includes the 10-acre area of the only known population of Tiehm's buckwheat.

## STATUTORY AND REGULATORY BACKGROUND

### A.    Administrative Procedure Act ("APA")

23.    The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

24.    The APA provides that "[e]ach agency shall give an interested person the right to petition for the issuance . . . of a rule."  5 U.S.C. § 553(e).

25.    The APA also provides that an "interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function."  5 U.S.C. § 555(b).  "[E]ach agency shall proceed to conclude a matter presented to it" "with due regard for the convenience and necessity of the parties . . . and within a reasonable time."  *Id.*

26.    "Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding."  5 U.S.C. § 555(e).  Unless affirming a prior denial or when the denial is self-explanatory, "the notice shall be accompanied by a brief statement of the grounds for denial."  *Id.*

27.    Pursuant to the APA, a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  5 U.S.C. § 702.

28.     Agency action made reviewable by statute and final agency actions for which there is no adequate remedy in a court are subject to judicial review.  5 U.S.C. § 704.

29.     The APA directs a court to compel agency action unlawfully withheld or unreasonably delayed; and to hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or agency action that is undertaken without observance of procedure required by law.  5 U.S.C. § 706.

**B.     Endangered Species Act ("ESA")**

30.     The ESA requires the Service, with authority delegated by the Secretary of the Interior, to determine whether any species is an endangered or threatened species because of any of the following five factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence.  16 U.S.C. § 1533(a)(1).

31.     The Service is to make, to the maximum extent practicable within ninety (90) days after receiving the petition under 5 U.S.C. § 553(e) of the APA to add a species as threatened or endangered, a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted.  16 U.S.C. § 1533(b)(3)(A).  If such information is found within a petition, the Service shall promptly commence a review of the species' status and shall promptly publish the finding in the Federal Register.  *Id.*

32.     The ESA requires publication of a 12-month listing determination after it has received a petition for listing a species as threatened or endangered that presents substantial information indicating that the petitioned action may be warranted.  16 U.S.C. § 1533(b)(3)(B). If the Service finds that listing of a species as threatened or endangered is warranted and that such listing is not precluded by higher priority actions, it shall promptly publish in the Federal

Register a general notice and the complete text of a proposed regulation to implement the threatened or endangered listing.  *Id*.

33.     The ESA requires the Service to publish a final regulation as to whether a species is threatened or endangered in the Federal Register within the one-year period beginning on the date the general notice is published.  16 U.S.C. § 1533(b)(6)(A)(i)(I).

34.     Where there is "any emergency posing a significant risk to the well-being of any species of fish or wildlife or plants," the Service need not comply with the regular listing process including notice and comment before issuing an emergency rule, so long as the agency publishes detailed reasons why such regulation is necessary and if the regulation applies to resident species of fish or wildlife, or plants, it gives actual notice of the regulation to the State agency of each State where the species is believed to occur.  16 U.S.C. § 1533(b)(7).

35.     The emergency listing takes effect after being published in the Federal Register. 16 U.S.C. § 1533(b)(7).  Emergency listing is a temporary measure that ensures immediate protection in an emergency, and expires 240 days following the date of publication unless the rulemaking procedures that apply for making a non-emergency listing determination were complied with during that time.  *Id*.

**C.     Federal Land Policy and Management Act ("FLPMA")**

36.     FLPMA is the "organic act" for management of the BLM public lands in which Congress set the policy for the BLM in managing public lands to include that they "be managed in a manner that will protect the quality of scientific, scenic, historical, ecological . . . values …." 43 U.S.C. § 1701(a)(8).

37.     In managing public lands, FLPMA requires the BLM to "take any action necessary to prevent unnecessary or undue degradation of the lands."  43 U.S.C. § 1732(b).

**<u>BLM DUTIES TO PROTECT THE TIEHM'S BUCKWHEAT</u>**

38.     BLM has established a national policy to designate and protect Sensitive Species on public lands it manages.  The policy provides guidance for the conservation of Sensitive

Species and the ecosystems upon which they depend.  U.S. Dep't of the Interior BLM, Special Status Species Mgmt. Manual 6840 3 (2008) ("Special Status Species Manual 6840").

39.    The objectives of the BLM special status species policy are:

A.    To conserve and/or recover ESA-listed species and the ecosystems on which they depend so that ESA protections are no longer needed for these species.

B.    To initiate proactive conservation measures that reduce or eliminate threats to Bureau sensitive species to minimize the likelihood of and need for listing of these species under the ESA.

Special Status Species Manual 6840 3.

40.    BLM has specifically acknowledged its duty to safeguard the public's interest in protecting Sensitive Species:

It is in the interest of the BLM to undertake conservation actions for such species before listing is warranted.  It is also in the interest of the public for the BLM to undertake conservation actions to improve status of Sensitive Species so sensitive recognition is no longer warranted.  By doing so, BLM will have greater flexibility in managing public lands to accomplish native species conservation objectives and other legal mandates.

. . .

In compliance with existing laws, including the BLM multiple use mission as specified in the FLPMA, the BLM shall designate Bureau sensitive species and implement measures to conserve these species and their habitats, including ESA proposed critical habitat, to promote their conservation and reduce the likelihood and need for such species to be listed pursuant to the ESA.

Special Status Species Manual 6840 36.

## FACTUAL ALLEGATIONS

### A.    Tiehm's Buckwheat

41.    Tiehm's buckwheat is an extremely rare plant species in the buckwheat family that is found only on 10 acres in an isolated location in the Rhyolite Ridge area of the Silver Peak Range mountains of western Nevada.

42.    Tiehm's buckwheat is a long-lived, mat-forming perennial shrub that is uniquely associated with a distinctive clay soil, which ranges in color from white to light brown and is

overlain with scattered rocks.  The soil parent material is diverse and includes claystones, shales, tuffaceous sandstones, rhyolite flows, and limestones.

43.     The entire range occupied by Tiehm's buckwheat amounts to only 10 acres spread across a two-square mile area of land that is administered by BLM in the Battle Mountain District of Nevada.

44.     There is only one population of Tiehm's buckwheat in the world and it is comprised of six subpopulations.  Before the recent event in which approximately 40% of the Tiehm's buckwheat population was removed and/or destroyed, the total number of individual plants was estimated at only 43,921 on a small 10-acre area of public land.

45.     Extensive surveys have failed to locate any additional populations of Tiehm's buckwheat outside this small area within the Silver Peak Range in western Nevada.

46.     All six subpopulations of Tiehm's buckwheat and its habitat are located within the proposed Project Area of a proposed mine known as the Rhyolite Ridge Mining Project.

47.     BLM has designated the Tiehm's buckwheat as a Sensitive Species.  BLM, Nevada Sensitive and Status Species List 40 (2017).

48.     On June 1, 2019, the Center's Nevada state director visited the Rhyolite Ridge Project Area, and observed Tiehm's buckwheat in full bloom, surveying all six subpopulations with a desert botanist.  Impacts were observed from mineral exploration activities including road-building and well-pad grading, within the area occupied by the buckwheat.  While the activity appeared recent, no evidence of ongoing activity was observed at that time, nor were equipment or personnel present.

49.     On June 10, 2019, the Center's Nevada state director visited the BLM's Tonopah field office and became concerned about the authorized mineral exploration activities within Tiehm's buckwheat habitat after examining notices.  At that time, however, there was no indication of current or ongoing activities, and BLM staff was unable to elaborate as to whether further activities were going to occur.

50.     On June 12, 2019, as required by regulations implementing the ESA, *see* 50 C.F.R. § 424.14(b), the Center provided formal 30-day notice to the State of Nevada that the Center intended to file a petition to designate as endangered and designate critical habitat for Tiehm's buckwheat.  The notice, copies of which were also sent to BLM and the U.S. Fish and Wildlife Service, explained that Tiehm's buckwheat is an extremely rare plant with a highly restricted habitat in the Silver Peak Range of Esmerelda County, Nevada, and at that time, was already under threat by mineral exploration activities and a proposed mining project.  The Center urged the State, BLM, and the Service to work together to cease all exploration activities within or adjacent to Tiehm's buckwheat habitat until proper environmental review could be conducted and the petition could be evaluated.

51.     On October 7, 2019, having received no response to its June 12, 2019 letter, the Center submitted a petition to the Service pursuant to 16 U.S.C. § 1533(b) of the ESA, 5 U.S.C. § 553(e) of the APA, and 50 C.F.R. 424.14(a), requesting that Tiehm's buckwheat be designated as an endangered species under the ESA.  Pursuant to the APA, the Center also formally requested that Tiehm's buckwheat be listed on an emergency basis under the ESA, 16 U.S.C. § 1533(b)(7), due to the significant risk posed by exploration activities and the proposed Rhyolite Ridge Mining Project.

52.     On July 22, 2020, the Service published a preliminary finding on the Center's October 7, 2019 petition to list the Tiehm's buckwheat under the ESA, finding that protecting the buckwheat as endangered or threatened "may be warranted," due to the substantial threats that the Center had documented.  U.S. Dep't of the Interior, *Endangered and Threatened Wildlife and Plants; 90-Day Findings for Two Species*, 85 Fed. Reg. 44265 (July 22, 2020) ("90-Day Finding").

53.     However, in its 90-Day Finding, the Service did not formally conclude whether it would issue an emergency rule to protect the Tiehm's buckwheat at the time it issued the 90-day Finding, but instead merely stated its belief that the *ESA* did not require the agency to respond.

85 Fed. Reg. 44267 ("The Act does not provide for a process to petition emergency listing; therefore, we are evaluating this petition under the normal process . . .").

54.     The ESA requires publication of a 12-month listing determination by no later than October 7, 2020, 16 U.S.C. § 1533(b)(3)(B).  In the event Service determines that listing is warranted, in the absence of immediate protection through an emergency listing, any timely final rule protecting the buckwheat would be required no sooner than November 7, 2021.  *Id*. §§ 1533(b)(6)(A), 1533(b)(4).

55.     On January 11, February 24, May 22, June 3, and June 26, 2020, the Center's Nevada state director visited the Rhyolite Ridge area and studied and photographed Tiehm's buckwheat, examined the site for signs of disturbance, and shared information about the wildflower and site with visiting journalists.  No sign of unusual activity was observed during these visits.  On May 22, the flowers appeared to be at peak bloom, though a majority of flowers were still blooming on June 3.  By June 26, most had gone to fruit, and by July 5, only some fruits remained.

56.     On July 5, 2020, the Center's Nevada state director visited the Rhyolite Ridge area and did not notice any destruction of plants or other unusual activity or phenomena.

**B.     Tiehm's Buckwheat Large-Scale Destruction Incident**

57.     On September 12, 2020, the Center's Nevada state director and a desert botanist visited subpopulation 1 of Tiehm's buckwheat at Rhyolite Ridge.  Significant disturbance was discovered at subpopulation 1, which is adjacent to the road that is used for accessing the Rhyolite Ridge area, with many plants missing.  This is depicted in the photo below; holes left by the removal of the plants are circled.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Above: Holes left and removed plants in subpopulation 1.*

58.     On September 13, 2020, the Center's Nevada state director and the desert botanist returned, conducting a complete survey of the damage.  They visited all six subpopulations (as established by Morefield (1995)) and observed some form(s) of destruction of individual plants throughout the species' range.

59.     Damage to these imperiled wildflowers consisted predominately of the: 1) entire plant having been dug up, leaving only a hole in the ground; 2) a portion of the buckwheat mat was dug up or removed from the ground, leaving a badly damaged remaining plant/mat; or 3) holes were dug up resulting in the removal of the plant with remaining taproots exposed and a large hole surrounding them.  While buckwheat remains were found, including whole plants and

pieces of plants, large amount of uprooted biomass indicated that uprooted plants were removed and transported elsewhere.



*Above: completely dug up plants, subpopulation 1.*



*Above: Exposed taproot, subpopulation 1.*



*Above: Destroyed buckwheat with loose pieces, exposed taproot, and small remaining rooted plants in subpopulation 1.*

60.     Significant footprints and disturbance in all subpopulations, including newly created social trails, were observed.

61.     Specific holes in the ground at subpopulations 1, 2, and 5 were counted, and although it is unclear how many plants were lost for each hole, at a minimum this amount would be one plant per hole.  In subpopulations 3, 4, and 6, the holes were too numerous to count.

62.     Subpopulations 1 and 2 are estimated to have lost 25 percent of their plant populations.  The emergent social trail pictured below was on the east side of subpopulation 2, an area observed to have virtually all plants extirpated.  This trail was not observed in previous visits to be of the same level of use and definition.



*Above: photo depicting new social trail 1*

63.     Subpopulations 3, 4, and 5 were the most severely affected, experiencing severe population loss.  Subpopulation 6, the largest of the subpopulations, appears to have lost 35 percent loss of individuals, with even losses even greater in subpopulation 6b.



*Above: destruction in subpopulation 6b.*

64.     Within subpopulations, some areas experienced more intensive removal and/or destruction, creating areas of nearly wholesale extirpation.

65.     The preliminary field survey estimates a loss of approximately 40 percent of the Tiehm's buckwheat global population.  Before the incident, the total global population, per EM Strategies' 2019 survey, was 43,921.  The estimated loss of 40 percent of the total population therefore equates to a loss of approximately 17,000 individual plants.  Below is a table of this preliminary field data.

/ / /

/ / /

/ / /

| Subpopulation | Estimated number of plants per 2019 survey (Percent of population) | (Count of holes 2020) | (Visual assessment 2020) | (Count of plants destroyed based on visual assessment) |
|---|---|---|---|---|
| 1 | 9,240 (21%) | 1,500 | 25% extirpation | 2,310 |
| 2 | 4,541 (10%) | 650 | 25% extirpation | 1,135 |
| 3 | 1,860 (4%) | N/A | 90% extirpation | 1,620 |
| 4 | 8,159 (19%) | N/A | 80% extirpation | 6,527 |
| 5 | 199 (1%) | 49 | 100% extirpation | 199 |
| 6 (a, b) | 19,871 (45%) | N/A | 35% extirpation | 6,855 |
|  |  |  |  |  |
| Total | 43,921 |  |  | **18,646** |
| Percent of total population | 100% |  |  | **42.40%** |

*Figure 1: data from preliminary field survey on September 13, 2020 of Tiehm's buckwheat destruction incident. Column 2 data per EM Strategies 2019 survey.*

66.    By letter dated September 15, 2020, the Center and the California Botanic Garden alerted BLM Battle Mountain District Manager; the Service's Field Supervisor; the Nevada Division of Forestry; Ioneer, Ltd., the mining company proposing the Rhyolite Ridge lithium-boron mine; and Ioneer's consultant, EM Strategies, to the loss of approximately 40 percent of Tiehm's buckwheat, documenting the recent destruction incidents, and petitioning all parties to take immediate corrective action.

67.    In addition, in their September 15, 2020 letter, the Center and the California Botanic Garden asked the Service to: immediately and comprehensively survey the population to assess the damage; issue an emergency rule to immediately protect Tiehm's buckwheat as an endangered species under the ESA; designate critical habitat for the entirety of the buckwheat's occupied range; and develop a recovery plant to ensure Tiehm's buckwheat does not go extinct.

68.    The September 15, 2020 letter asked BLM to: flag visible holes to enable assessments during the 2021 spring vegetative growth period; backfill holes to prevent erosion, including focused effort on potentially viable plants that had their roots exposed and surrounded by holes; repair damage to plants and provide plant care, like supplemental water; fence the

entire Tiehm's buckwheat habitat with secure fencing; install security/game cameras; install proper signage to inform the public that sensitive resources are present; commence an investigation into the destruction and/or removal of plants; and prosecute any violation of applicable federal law.

69.     After sending the September 15, 2020 letter, the Center learned that a week earlier, a field technician from the University of Nevada, Reno field had alerted the Service, BLM, and Nevada Division of Forestry of destruction of Tiehm's buckwheat.  It is not known whether this technician's alert, dated September 8, 2020, addressed the same destruction and/or removal that was observed by the Center's Nevada state director on September 12 and 13.  It is also not known whether the Service or BLM took any steps to stop or reverse the destruction in response to the September 8, 2020 letter.

70.     The destruction and/or removal occurred between July 5, 2020 and September 11, 2020 remains a clear and, until stopped, ongoing threat to the species' very survival.

71.     Field observations revealed evidence of human presence throughout areas in which Tiehm's buckwheat had been removed and/or destroyed.  In addition, the targeted nature of the damage, combined with the lack of feces, pawprints, hoofprints, or other evidence of wildlife, suggest human involvement or causation.  In public comments, Ioneer, a University of Nevada biology professor, and the Nevada Department of Conservation and Natural Resources suggested that rodents or other small mammals are responsible for the destruction.  However, botanists specializing in buckwheat and desert plants, along with mammologists, have stated that the damage appears unprecedented in severity and inconsistent with any previously reported rodent depredations.  Botanists Dr. Naomi Fraga, Dr. Ben Grady, and Dr. Lucinda McDade, as well as mammologists Dr. Christopher Moore and Mr. Scott Tremor sent letters to the Service on September 28, 2020 describing their observations regarding the destruction and skepticism about the small mammal hypothesis.  Regardless of the cause, all parties agree that the impact on the plants is "alarming."

72.     On September 17, 2020, the Center sent a petition to the Service renewing its October 7, 2019 request that the Service immediately protect the Tiehm's buckwheat with its emergency listing authority under the ESA, particularly in light of the recent destruction.  5 U.S.C. §§ 553(e), 555(b); 16 U.S.C. § 1533(b)(7).

73.     The September 17, 2020 request stressed that emergency protection is needed right away to protect the species from an ongoing, emerging, and significant risk to its "well-being" that has come to light since the Service determined listing may be warranted already, due to preexisting threats as outlined in the Service's 90-Day Finding.  16 U.S.C. § 1533(b)(7).  The request also noted that the Service failed to formally conclude the Center's October 7, 2019 request for emergency listing and, in light of the additional, existential threat presented by the recent incidents of destruction and/or collection, the risk to the species' "well-being," indeed its very existence, is even more dire.  Given the exigent circumstances, the Center requested the Service provide a conclusion of the matter no later than close of business on September 24, 2020.  *Id*.

74.     On September 17, 2020, the Center also provided a petition to BLM requesting that it take immediate action consistent with its legal authorities and responsibilities under FLPMA and its sensitive species policy to protect the Tiehm's buckwheat from any further harm and mitigate harm caused by the recent destruction and/or removal.  The petition re-iterated the immediate action that the Center asked the agency to take in its September 15, 2020 letter and included it as Attachment A to the petition.  The Center requested that BLM also provide a conclusion of the matter no later than close of business on September 24, 2020 due to the exigent circumstances facing the species.

75.     On September 20, 2020, the Center's Nevada state director, a desert botanist from the California Botanic Garden, and others visited the Tiehm's buckwheat populations and observed that since September 13, 2020, many of the holes in subpopulations 1 and 2, which are closest to the access road, had been filled in, and other new disturbance to the area was evident,

such as plants put back in holes and numerous new footprints.  Subpopulations 3, 4, 5, and 6 appeared similar to how they appeared September 13, 2020.

76.     On September 22, 2020, the Reno U.S. Fish and Wildlife Service Field Supervisor called Center staff saying that the Service had received the Center's September 17, 2020 petition and were evaluating next steps.

77.     On September 23, 2020, BLM sent an e-mail to Center staff that stated in its entirety:

> Mr. Lake, I have been asked to respond to your September 17, 2020 letter to Douglas Furtado, District Manager, Bureau of Land Management, Battle Mountain District.  The BLM Battle Mountain District appreciates the information outlined in your letter and will consider these matters, as appropriate.

78.     On September 23, 2020, Center staff returned to Ryholite Ridge with experts and members of the press.  Further alterations of the site since September 20, 2020, in particular to subpopulations 4, 5, and 6, were observed.  These alterations were similar to what was observed at subpopulations 1 and 2 on September 20, 2020, which included the backfilling of empty holes and holes in the soil around remaining plants and insertion of dead plant parts into the soil.  Subpopulation 3 was not visited on this date, and it is unknown to Plaintiff at this time whether it was altered.

79.     By letter dated September 28, 2020 to the Service and BLM, the Center documented alterations to the site that were observed on September 20 and 23, 2020.  The letter re-iterated that despite these changes at subpopulation 1, 2, 4, 5, and 6, the need for the Service to undertake emergency listing pursuant to the ESA and for BLM to take the immediate actions, including on-the-ground actions that were identified in the September 15, 2020 letter, remain unchanged.  The Center also conveyed that regardless the cause of this destruction, there is agreement that the situation is "very alarming" and that emergency action is essential to address the dire situation of the plant and the on-going risk of further harm.

80.     On September 28, 2020, Dr. Naomi Fraga, Laura Cunningham, and Kevin Emmerich sent letters to the Service describing changes observed at the site between September 13th and September 23rd.

81.     Until the causes of the destruction and/or removal of Tiehm's buckwheat are determined and stopped, this remains an ongoing and existential threat to the species.  It is also a new threat that has come to light since the Center's listing petition and request for emergency listing of October 7, 2019 and the Service's 90-Day Finding of July 22, 2020, which concluded that protection of Tiehm's buckwheat under the ESA may already be warranted.

## FIRST CLAIM FOR RELIEF

The Service Has Unreasonably Delayed in Concluding the Center's Request to Emergency List the Tiehm's Buckwheat.  In the Alternative, the Service Has Arbitrarily and Capriciously and/or Abused its Discretion in Concluding the Center's Request and Failing to Emergency List the Tiehm's Buckwheat.

82.     The Center hereby incorporates by reference all preceding paragraphs.

83.     On October 7, 2019, the Center petitioned the Service ESA to list the Tiehm's buckwheat pursuant to its emergency authority under the ESA because the mining exploration and a proposed lithium-boron mine pose significant risks to the well-being of the species.  16 U.S.C. § 1533(b)(7).  The Center also petitioned the Service under the APA to exercise its emergency listing authority under the ESA.

84.     On July 22, 2020, the Service published its preliminary finding on the Center's October 7, 2019 petition to list the Tiehm's buckwheat under the ESA, finding that protecting the buckwheat as endangered or threatened may be warranted due to substantial, myriad threats that the Center had documented.  85 Fed. Reg. 44265.  The Service did not conclude the Center's request for emergency listing, merely noting that the ESA does not provide a procedure for the public to request emergency listing.

85.     The Service also did not provide a conclusion, under the APA, 5 U.S.C. § 555(b), as to whether it will emergency list Tiehm's buckwheat under the ESA.  Since then,

approximately 40 percent of the Tiehm's buckwheat population has been destroyed, collected, and/or removed it from its habitat on public land.

86.     On September 17, 2020, in the absence of any substantive response to its petition, the Center renewed its request for emergency listing, explaining that the recent destruction of approximately 40 percent of the total population has placed the species in desperate circumstances and until the cause is found and halted, the potential for further destruction remains a present and ongoing threat that is a significant risk to the well-being of the plant.

87.     As of the filing of this lawsuit, the Service has failed to reach a conclusion under the APA, 5 U.S.C. § 555(b), in response to the Center's October 7, 2019 petition under the APA, *id.*, § 553(e), as renewed by the Center on September 17, 2020, to immediately protect Tiehm's buckwheat under its emergency listing authority, to protect the buckwheat pending the Service's completion of the listing process.  This unreasonable delay violates the APA, which requires that agencies conclude matters presented to them within a reasonable time.  *See* 5 U.S.C. §§ 553(e), 555(b), 706(1).

88.     Alternatively, to the extent the Service maintains that it has concluded, and denied, the emergency listing request, the agency has, contrary to the APA, *see* 5 U.S.C. § 706(2)(A), arbitrarily and capriciously and/or abused its discretion in denying the petition, including because the Service has set forth no substantive rationale for such denial and has not responded in any manner to the reasons proffered by the Center for emergency listing.

## **SECOND CLAIM FOR RELIEF**

The BLM Has Unreasonably Delayed in Concluding the Center's Request that BLM Comply with its Protection Mandate and Sensitive Species Policy to Protect the Tiehm's Buckwheat from Destruction and/or Removal.  In the alternative, BLM Has Arbitrarily and Capriciously and/or Abused its Discretion in Concluding the Center Request and Failing to Comply with its Protection Mandate and Sensitive Species Policy to Protect the Tiehm's Buckwheat from Destruction and/or Removal.

89.     The Center hereby incorporates by reference all preceding paragraphs.

90.     Under the extraordinary circumstances at hand—in which the fate of a highly imperiled plant on BLM lands hangs in the balance and emergency action is clearly called for—

the BLM has unreasonably delayed in concluding the Center's September 17, 2020 petition as to whether it will comply with FLPMA's protection mandate and prevent undue or unnecessary degradation, and to protect BLM sensitive species consistent with BLM sensitive species policies, by taking immediate action to protect Tiehm's buckwheat, including by repairing damage to still-living plants, backfilling all holes to prevent erosion, flagging visible holes to enable monitoring and future assessments, enclosures, security cameras, installing signage, posting a security guard or law enforcement officer at Rhyolite Ridge, and investigating and/or prosecuting violations as appropriate and to the fullest extent possible.  5 U.S.C. §§ 555(b), 706(1); 43 U.S.C. § 1732(b); <u>BLM Manual 6840</u>.

91.     Alternatively, to the extent BLM maintains that it has provided a final response to the petition, BLM has arbitrarily and capriciously concluded and/or abused its discretion in deciding  not to comply or failing to fully comply with FLPMA's protection mandate and prevent undue or unnecessary degradation and protect BLM sensitive species consistent with BLM sensitive species policies, by taking immediate action to protect Tiehm's buckwheat, including by repairing damage to still-living plants, backfilling all holes to prevent erosion, flagging visible holes to enable monitoring and future assessments, enclosures, security cameras, installing signage, posting a security guard or law enforcement officer at Rhyolite Ridge, investigating and/or prosecuting violations as appropriate and to the fullest extent possible.  5 U.S.C. §§ 555(b), 706(1); 43 U.S.C. § 1732(b); <u>BLM Manual 6840</u>.

**PRAYER FOR RELIEF**

WHEREFORE, the Center respectfully requests that this Court:

A.     Declare that the Service has violated the APA and ESA and ordering that the Service must conclude and issue a final decision on the Center's request to emergency list the Tiehm's buckwheat by a date certain to be established by the Court;

B.     Declare that the BLM has violated the APA, FLPMA, and its sensitive species policies and ordering that BLM must conclude and issue a final decision on the Center's request to take immediate meaningful on-the-ground actions to protect Tiehm's buckwheat from further

destruction and mitigate and prevent any further harm to the species pursuant to its FLPMA

protection mandate and sensitive species policies;

C.      Set aside and remand any final decisions(s) that the Service and/or BLM maintain

they have made to deny the Center's petitions;

D.      Issue any other relief, including preliminary and permanent injunctive relief to

ensure a conclusion of this matter, and to protect Tiehm's buckwheat, that the Court deems

necessary and appropriate under the circumstances;

E.      Award to the Center its costs, expenses, expert witness fees, and reasonable

attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

F.      Grant the Center such further relief as may be just, proper, and equitable.

Dated September 29, 2020                Respectfully submitted,

*/s/ Don Springmeyer*
Don Springmeyer, Esq. (SBN 1021)
Christopher W. Mixson, Esq. (SBN 10685)
**Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP**
3556 East Russell Road
Las Vegas, NV  89120
Phone: (702) 341-5200
dspringmeyer@wrslawyers.com
cmixson@wrslawyers.com

Allison N. Melton (SBC 45088)
**Center for Biological Diversity**
P.O. Box 3024
Crested Butte, CO 81224
Phone: (970) 309-2008
amelton@biologicaldiversity.org
(*pro hac vice application to be submitted*)

Amy R. Atwood (SBO 060407)
**Center for Biological Diversity**
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6401
atwood@biologicaldiversity.org
(*pro hac vice application to be submitted*)

*Attorneys for Plaintiff*