CHRISTOPHER W. MIXSON, ESQ. (SBN 10685)
DON SPRINGMEYER, ESQ. (SBN 1021)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Phone: (702) 341-5200 / Fax: (702) 341-5300
cmixson@wrslawyers.com
dspringmeyer@wrslawyers.com

ALLISON N. MELTON (SBC 45088), *pro hac vice*
**CENTER FOR BIOLOGICAL DIVERSITY**
P.O. Box 3024
Crested Butte, CO 81224
Phone: (970) 309-2008
amelton@biologicaldiversity.org
*Attorneys for Plaintiff (additional counsel on signature page)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; | Case No.: 2:20-cv-1812-JCM-NJK |
| Plaintiff, | **PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| BERNHARDT, ET AL; | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

1

**TABLE OF CONTENTS**

2

INTRODUCTION ......................................................................................................... 1

3

I. THE CENTER'S MOTION FOR SUMMARY JUDGMENT IS TIMELY ............................ 1

4

5

II. THE SERVICE CONCEDES CLAIM 3 LIABILITY BUT CANNOT JUSTIFY NEEDING
10 MONTHS FOR THE OVERDUE 12-MONTH FINDING FOR TIEHM'S BUCKWHEAT,
WHICH MAY GO EXTINCT IN THE NEXT SIX MONTHS. .................................................. 3

6

7

A. Defendants Concede Liability as To Claim 3, Which Is Indisputably an ESA Citizen-Suit
Claim Brought Pursuant To the ESA's Citizen-Suit Provision. ............................................. 3

8

9

B. Plaintiff Properly Relied on the Waiver to the 60-Day Waiting Period Due to an
Emergency to the Species' Existence ......................................................................... 4

10

11

C. The Service's Conclusion That Tiehm's Buckwheat Is Not at Significant Risk Is
Arbitrary and Capricious, Contrary To the Facts, and Based on Factors That Have No
Relationship to the ESA or its Conservation Purpose. ...................................................... 5

12

13

D. Plaintiff's Requested 30-Day Timeline for the Overdue 12-Month Finding Will
Effectuate the ESA's Conservation Purpose, Whereas Defendants' 10-Month Timeline May
Come After the Species' Extinction and Depends on a Series of Unnecessary Bureaucratic
Steps That Exceed the Statutory Timeline of 12 Months. .................................................... 9

14

15

E. The *TRAC* Factors Are Irrelevant To Assessing Proper Injunctive Relief To Remedy the
Service's Liability Under Section 4 and the ESA Foreclosed Courts Usual Equitable
Discretion in Granting This Relief ............................................................................ 13

16

17

III. HENCE THE COURT SHOULD ORDER THE SERVICE TO MAKE A LAWFUL
EMERGENCY LISTING DETERMINATION FOR TIEHM'S BUCKWHEAT WITHIN 14
DAYS (CLAIM 1). ................................................................................................... 17

18

19

A. The APA Provides the Means To Petition for an Emergency Rulemaking and to Obtain
Judicial Review of Any Arbitrary and Capricious Decision in Response. ............................ 17

20

21

B. Ruling for the Center in This Case Will Not Result in an Endless Parade of Emergency
Listing Petitions Under the APA, but This Would Not Affect Plaintiff's APA Rights
Anyway. ............................................................................................................... 22

22

23

C. Defendants Cannot Rationalize Their Arbitrary Decision Rejecting Immediate Protection
of Tiehm's Buckwheat Through an Emergency Listing Rule. ............................................ 24

24

25

26

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV. BLM HAS UNREASONABLY DELAYED IN TAKING NON-DISCRETIONARY, DISCRETE ACTION AS THE APA REQUIRES AND SHOULD BE ORDERED TO RESPOND TO THE CENTER'S PETITION ABOUT ITS EFFORTS TO PROTECT TIEHM'S BUCKWHEAT ...................................................................................... 266

CONCLUSION................................................................................................... 30

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

P A G E | ii

# TABLE OF AUTHORITIES

**Cases**

*Adair v. Troy State Univ.*, 892 F. Supp. 1401 (M.D. Ala. 1995) ....................................... 5

*Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990) ............................................................ 6

*Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987) ....................................... 23

*Am. Lands All. v. Norton*, 242 F. Supp. 2d 1 (D.D.C. 2003) ...................................... 10

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987) ......................................... 15

*Animal Legal Def. Fund v. Vilsack*, 237 F. Supp. 3d 15 (D.D.C. 2017) ................ 24, 26

*BE&K Constr. Co. v. NLRB, 5*36 U.S. 516 (2002) ...................................................... 19

*Bennett v. Spear*, 520 U.S. 154 (1997) .......................................................... 18, 20, 24

*Biodiversity Legal Found. v. Babbitt*, No. CA 96-1156 (JLG),

  1997 U.S. Dist. LEXIS 23007 (D.D.C. Mar. 26, 1997) ............................................ 15

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002)...... 10, 12, 14, 15

*Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1 (D.D.C. 2003) ..................... 10

*Block v. SEC*, 50 F.3d 1078 (D.C. Cir. 1995) ............................................................... 27

*Boettcher v. Sec'y of Health & Human Servs., 7*59 F.2d 719 (9th Cir. 1985) ............... 2

*Butte Env't Council v. White*, 145 F. Supp. 2d 1180 (E.D. Cal. 2001)......................... 17

*California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106 (N.D. Cal. 2017) .................... 2

*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) ..................................... 5, 6

*City of Hurricane v. Disposal Serv.*, 36 F. Supp. 3d 692 (S.D.W. Va. 2014) ............... 5

*Cmty. Voice v. EPA (In re Cmty. Voice)*, 878 F.3d 779 (9th Cir. 2017) ................ 24, 26

*Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW,

  2008 U.S. Dist. LEXIS 34753 (N.D. Cal. Apr. 28, 2008)......................................... 10

*Ctr. for Biological Diversity v. Norton*, 163 F. Supp. 2d 1297 (D.N.M. 2001).......................... 16

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT

*Ctr. for Biological Diversity v. Norton*, 254 F.3d 833 (9th Cir. 2001) ................................ 10, 12

*Ctr. for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174 (D. Ariz. 2003) ........................ 16

*Ctr. for Biological Diversity v. Ross,* 349 F. Supp. 3d 38 (D.D.C. 2018). .................................. 2

*Defs. of Wildlife v. Babbitt*, 958 F. Supp. 670 (D.D.C. 1997) ........................................ 13

*Env't Def. Ctr. v. Babbitt*, 73 F.3d 867 (9th Cir. 1995) .................................................. 11

*Fed'n of Fly Fishers v. Daley*, 131 F. Supp. 2d 1158 (N.D. Cal. 2000) .................................. 9

*Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999) ........................................ 14

*Friends of the Clearwater v. Dombeck*, 222 F.3d 552 (9th Cir. 2000) .................................. 2

*Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217 (9th Cir. 2011) .................................. 28

*Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.,* 378 F.3d 1059 (9th Cir. 2004) ........... 5

*Hallstrom v. Tillamook Cnty.*, 493 U.S. 20 (1989) ................................................. 4, 5

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) .................................. 10

*In Re Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) ........................... 27, 28

*In re Barr Lab'ys, Inc.*, 930 F.2d 72 (D.C. Cir. 1991) ............................................... 14

*Las Vegas v. Lujan*, 891 F.2d 927 (D.C. Cir. 1989) .......................................... 19, 20, 25

*Marbled Murrelet v. Babbitt*, 918 F. Supp. 31 (W.D. Wash. 1996) .................................. 15

*Marbled Murrelet v. Lujan*, No. C91-522WDR,

  1992 U.S. Dist. LEXIS 14645 (W.D. Wash. Sept. 15, 1992) ................................ 10

*Min. Pol'y Ctr. v. Norton*, 292 F. Supp. 2d 30 (D.D.C. 2003) ........................................ 28

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ............... 5, 23

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) ............................................... 28

*NRDC v. EPA (In re NRDC)*, 956 F.3d 1134 (9th Cir. 2020) .......................................... 28

*Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136 (9th Cir. 2007) ...................... 13

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977 (9th Cir. 2006) ................................ 24

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT

P A G E | **iv**

*Pub. Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d 1150 (D.C. Cir. 1983)................................ 30

*Pub. Citizen v. Heckler*, 602 F. Supp. 611 (1985) .............................................. 29, 30

*Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739 (W.D. Tex. 1997)............................................ 11

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ......................................................... 5

*Silver v. Babbitt*, 924 F. Supp. 976 (D. Ariz. 1995)......................................................... 5

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*,

   143 F.3d 515 (9th Cir. 1998) .............................................................. 4

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)..................... 9, 13, 14, 28

*Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978) ............................................. 15

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ......................................... 6

*W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011).............................. 2

*W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93 (D.D.C. 2013)................................ 2

*W. Watersheds Project v. U.S. Fish & Wildlife Serv.*, No. 4:10-CV-229-BLW,

   2012 U.S. Dist. LEXIS 13771 (D. Idaho Feb. 2, 2012) ........................................ 16

*Wash. Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005) ................................. 8

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ..................................... 15

*Weyerhaeuser Co. & U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361 (2018) .......................... 21, 22

*WildEarth Guardians v. Kempthorne*, 592 F. Supp. 2d 18 (D.D.C. 2008)...................... 21, 22, 23

*Wildwest Inst. v. Kurth*, 855 F.3d 995 (9th Cir. 2017)........................................ 12

**Statutes**

5 U.S.C. § 551(12) ................................................................... 20

5 U.S.C. § 551(13) .............................................................. 18, 20, 24

5 U.S.C. § 551(5) ................................................................... 20

5 U.S.C. § 553 ..................................................................... 18

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT

5 U.S.C. § 553(b)-(d) ............................................................................................... 19

5 U.S.C. § 553(e) .......................................................................................... 18, 19, 24

5 U.S.C. § 555(b) ...................................................................... 20, 23, 24, 26, 27

5 U.S.C. § 555(e) ...................................................................................................... 23

5 U.S.C. § 559 .......................................................................................................... 19

5 U.S.C. § 701(a)(2) ................................................................................................. 21

5 U.S.C. § 702 .......................................................................................................... 18

5 U.S.C. § 704 .......................................................................................................... 21

5 U.S.C. § 706(1) ........................................................................... 9, 13, 20, 26

5 U.S.C. § 706(2)(A) ........................................................................................ 21, 26

16 U.S.C. § 1531 ...................................................................................................... 23

16 U.S.C. §§ 1531 - 1544 ........................................................................................ 1

16 U.S.C. § 1533 ............................................................... 3, 4, 10, 11, 15, 19, 22

16 U.S.C. § 1533(b)(1)(A) ...................................................................................... 13

16 U.S.C. § 1533(b)(2) ............................................................................................ 21

16 U.S.C. § 1533(b)(3)(B) ........................................................................................ 3

16 U.S.C. § 1533(b)(4) ............................................................................................ 19

16 U.S.C. § 1536(a)(2) .............................................................................................. 8

16 U.S.C. § 1539(a)(2) .............................................................................................. 8

16 U.S.C. § 1540(g) .............................................................................................. 1, 3

16 U.S.C. § 1540(g)(1)(C) ........................................................................................ 3

16 U.S.C. § 1540(g)(2)(C) .................................................................................. 3, 5, 6

28 U.S.C. § 1651(a) ................................................................................................. 14

42 U.S.C. §§ 4321 - 4347 ......................................................................................... 8

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT

42 U.S.C. §§ 6901 - 6992k ............................................................................... 4, 5

42 U.S.C. § 6921 ................................................................................................. 5

42 U.S.C. § 6972(b)(1)(A) ................................................................................... 5

42 U.S.C. § 7412(i)(3)(A) .................................................................................... 5

**Other Authorities**

Attorney General's Manual on the Admin. Proc. Act 122 (1973) ................................ 19

H. Agreement to the Conf. Rep. on S. 1981, Endangered Species Act of 1973 .......................... 20

H. Consideration and Passage of H.R. 37, With Amendments Endangered and Threatened

    Species Conservation Act of 1973 (Sept. 18, 1973) ................................ 23

H. Consideration and Passage of S. 10229, as Amended,

    Endangered Species Act Amendments ................................................ 20

H.R. Rep. 97-835 (1982) (Conf. Rep.) ................................................................ 12

S. Rep. No. 79-752 (1945) .................................................................................. 26

S. Rep. No. 418, 97th Cong., 2d Sess., 10 (1982) ................................................. 9

**Constitutional Provisions**

U.S. Const. Amend. I ........................................................................................ 19

**Regulations**

40 C.F.R. § 1502.24(a) ...................................................................................... 8

43 C.F.R. §§ 14.2 - 14.3 ........................................................................ 18, 19, 24

43 C.F.R. § 14.3 ............................................................................................... 20

85 Fed. Reg. 43,352 (July 16, 2020) ..................................................................... 8

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT

P A G E | **vii**

**INTRODUCTION**

As the case currently stands, there is no genuine dispute of material facts. All parties agree that Tiehm's buckwheat has suffered unprecedented damage. In a matter of months, roughly half (or more) of the wildflowers' global population has been destroyed or damaged. Although there was already an urgent need for this species to obtain swift protection under the Endangered Species Act ("ESA"), the need has undeniably heightened, prompting Plaintiff, the Center for Biological Diversity ("Center"), to invoke its rights under the Administrative Procedure Act ("APA") as well as the ESA, to protect this unique wildflower. Rather than dispute the developments that prompted this litigation, Defendants, U.S. Fish and Wildlife Service ("Service") and Bureau of Land Management ("BLM"), misrepresent the Center's claims and ignore dispositive statutory language and case law. None of their arguments are persuasive. In sum, this Court should grant the relief as the Center requested. ECF No. 17 at 24-25.

I.   THE CENTER'S MOTION FOR SUMMARY JUDGMENT IS TIMELY.

Defendants complain that Plaintiff filed its motion for summary judgment before the agencies could produce an administrative record, ECF No. 29, at 8; *id*. at 1-2 (same), but this argument makes no sense. The Court granted Plaintiffs' motion to shorten the briefing deadlines for Plaintiff's motion, ECF No. 23, and Defendants have now cross-moved for summary judgment without insisting on formal preparation of an administrative record. Defendants have not identified *any* material records that have not already been submitted to the Court by Plaintiff.

This is unsurprising, since the gravamen of Plaintiffs' claims concerns Defendants' ongoing failure to take action as required by the APA, Claims 1 and 2, and the remedy for Defendants' violation of Plaintiff's ESA citizen-suit claim, Claim 3. However, resolution of each of these claims is not confined to an administrative record. *See* ECF No. 29 at 8 n.3 (Defendants acknowledging that in unreasonable delay cases, the record is "not temporally limited because

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

there is no final agency action" and hence what the court may consider "continue[s] to evolve over time"). For Claims 1 and 2, given the lack of meaningful action to protect the wildflower—or even to respond to the Center's petitions—there can be "no 'administrative record' for a federal court to review." *See, e.g., W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013) (internal quotation omitted); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (action to compel environmental impact statement not limited to administrative record as there was no final agency action to demarcate its limits). Plaintiff's ESA citizen-suit claim, Claim 3, also requires no record. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) (explaining "because the ESA provides a citizen suit remedy" courts "may consider evidence outside the administrative record" in resolving citizen suit claims). As the merits are uncontested, Claim 3 also concerns a narrow remedy issue, resolution of which is not confined to a record either. *See Ctr. for Biological Diversity v. Ross,* 349 F. Supp. 3d 38, 45-46 (D.D.C. 2018).

In addition, the pending motions present predominantly legal issues—i.e., whether Defendants have a legal obligation to respond to Plaintiffs' APA petitions—a posture that would render further delay for an administrative record "wasteful and unhelpful." *Boettcher v. Sec'y of Health & Human Servs., 7*59 F.2d 719, 722 (9th Cir. 1985); *California. v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1114, 1116 (N.D. Cal. 2017). Insofar as resolution of legal issues turns on any material facts, those are substantiated with exhibits and declarations that have been filed with the Court. Defendants do not contest the authenticity of Plaintiff's exhibits or identify any specific records with material information that is purportedly missing. Hence, there is no valid reason why the parties' motions cannot be resolved based on materials already before the Court.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

II.   THE SERVICE CONCEDES CLAIM 3 LIABILITY BUT CANNOT JUSTIFY
      NEEDING 10 MORE MONTHS FOR THE OVERDUE 12-MONTH FINDING FOR
      TIEHM'S BUCKWHEAT, WHICH MAY GO EXTINCT IN THE NEXT SIX
      MONTHS.

   A.   Defendants Concede Liability as To Claim 3, Which Is Indisputably an ESA Citizen-
        Suit Claim Brought Pursuant To the ESA's Citizen-Suit Provision.

Defendants concede liability on the merits of Plaintiff's Claim 3—which is a claim

brought under the ESA citizen-suit provision, 16 U.S.C. § 1540(g), notwithstanding Defendants'

effort to recast it—as they "do[] not dispute [the Service's] statutory obligation to make a 12-

month finding" for Tiehm's buckwheat, or "that it has missed the deadline."  ECF No. 29 at 33;

ECF No. 28 at 26 & n.7.  Instead, Defendants spend most of their brief avoiding the remaining

question: the appropriate injunctive relief for that violation, and what deadline should be

imposed on them for the overdue 12-month finding.

      While Defendants try to recast it, there can be no mistake; Plaintiff properly noticed and

brought Claim 3 pursuant to the ESA jurisdictional and citizen-suit provisions and clearly

requested declaratory and injunctive relief for the Service's failure to carry out its

nondiscretionary obligation to issue a 12-month finding for Tiehm's buckwheat. 16 U.S.C. §

1533(b)(3)(B); 16 U.S.C. § 1540(g)(1)(C) (authorizing "any person to commence a civil suit on

his own behalf . . . against the [Service] where there is alleged a failure of the [Service] to

perform any act or duty under section 4 which is not discretionary . . ."). The Center invoked the

ESA's citizen-suit provision in its NOI, framed Claim 3 as an ESA citizen-suit claim in its First

Amended Complaint, requested declaratory and injunctive relief as provided by the ESA in its

Prayer for Relief, and briefed Claim 3 as an ESA citizen-suit claim in its motion for summary

judgment as well as in its opposition to Defendants' motion to dismiss. ECF No. 17-21 at 1, 3

(quoting *Id.* § 1540(g)(2)(C)); ECF No. 11 ¶¶ 5, 8, 34, 39-40, 59, 87, 98-99; *id.* at 26-27 (Prayer

for Relief); *see also* ECF No. 17 at 5-10, 15-16. The Center has more than surpassed its

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY
JUDGMENT

obligations to alert the Service as to the nature of the violation.[1]

    B.  <u>Plaintiff Properly Relied on the Waiver to the 60-Day Waiting Period Due to an Emergency to the Species' Existence</u>.

Defendants take issue with the Center's decision to file its Amended Complaint about one week after its notice of intent, and not first waiting 60 days. ECF No. 29 at 18-19; ECF No 28-2 at 1. However, Defendants do not dispute that the ESA specifically provides that where there is an urgent threat to the well-being of a species, a suit may be brought over an ESA Section 4 violation immediately after notice is given—which is precisely what the Center did here in view of the rapid extirpation of much of the wildflower's remaining habitat.

In trying to argue that invoking the emergency waiver to the 60-day waiting period under the ESA somehow rendered "inadequate" Plaintiff's notice-of-intent-to-sue letter ("NOI"), ECF No. 17-21, Defendants rely on distinguishable cases that concern other issues related to the adequacy of notice under the ESA or analogous citizen-suit provisions in other environmental statutes, such as the Resource Conservation and Recovery Act ("RCRA"). These cases do not concern the issue here: whether litigants properly relied on similar emergency waivers to pre-litigation waiting periods, e.g., involving threats to human health or welfare. ECF No. 18 at 27 (citing *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 27 (1989) and *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520-21 (9th Cir. 1998)). At the same time, Defendants ignore cases in which federal courts have upheld litigants' reliance on such waivers. *See*, *e.g.*, *City of Hurricane v. Disposal Serv.*, 36 F. Supp. 3d 692, 693-94, 699-700

---

[1] Plaintiffs' reference to the APA as an *alternative* basis for relief is immaterial because the ESA's citizen-suit provision provides for the Center's requested remedies for Claim 3, including declaratory and injunctive relief and other relief deemed just and proper, ECF No. 11 at 26-27, ¶¶ E-G; ECF No. 25 at 19.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

(S.D.W. Va. 2014) (denying motion to dismiss where plaintiffs properly invoked waiver of a 90-day waiting period in RCRA citizen-suit provision, 42 U.S.C. § 6972(b)(1)(A), for actions involving hazardous waste requirements violations, 42 U.S.C. § 6921; *Adair v. Troy State Univ.*, 892 F. Supp. 1401, 1409 (M.D. Ala. 1995) (holding suit properly brought without giving 60 days' notice prior to complaint alleging violations of Clean Air Act section concerning stationary-source emissions standards) (citing 42 U.S.C. § 7412(i)(3)(A)). As in these cases, the Center fully complied with the notice requirements of the ESA's citizen-suit provision and waiver of the 60-day waiting period in Section 11(g)(2)(C), 16 U.S.C. § 1540(g)(2)(C).[2]

C. The Service's Conclusion That Tiehm's Buckwheat Is Not at Significant Risk Is Arbitrary and Capricious, Contrary To the Facts, and Based on Factors That Have No Relationship to the ESA or its Conservation Purpose.

The Service asserts that the Court should "defer" to its interpretation of "emergency posing a significant risk to the well-being" of a species, the phrase set forth in the ESA's citizen-suit provision as well as Section 4(b)(7), 16 U.S.C. § 1533(b)(7), claiming that this language is "ambiguous" under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984) ("*Chevron*"). Defendants are wrong. To begin with, Defendants have not pointed to anyplace where the *Service*—as opposed to its counsel in this Court—has interpreted this phrase. Reviewing courts cannot defer to post hoc litigation positions. *See, e.g., Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv., 37*8 F.3d 1059, 1073-74 (9th Cir. 2004); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

---

[2] Indeed, the Center even provided the Service a litigation-free week "to cure the alleged illegality," even though it was not required to do so. *Hallstrom*, 493 U.S. at 30; *Silver v. Babbitt*, 924 F. Supp. 976, 987 (D. Ariz. 1995). Defendants elected not to cure the illegalities, even as they concede an imminent threat to Tiehm's buckwheat.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

In considering functionally identical arguments in another statute's private right of action, the Supreme Court has squarely rejected an agency's request for *Chevron* deference. *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990) (refusing to defer to Labor Department interpretation of right of action in Migrant and Seasonal Agriculture Worker Protection Act because there was no basis to conclude Congress intended the agency to control the scope of judicial remedies, where "it is fundamental 'that an agency may not bootstrap itself into an area in which it has no jurisdiction'"); *see also United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (explaining Chevron deference applies only when Congress delegates interpretive authority for a "particular provision"). Here, as in *Adams Fruit*, there is no basis for concluding that Congress, in creating a private right of action to challenge the Service's violations of the ESA, would want the Service to receive "deference" as to when litigants such as the Center should be able to avail themselves of that right of action.

There is no basis for deference here in any event, because the statutory language is unambiguous. *See Chevron*, 467 U.S. at 842 (if "Congress has spoken clearly on the disputed question, then 'that is the end of the matter'"). The language "emergency posing a significant risk to the well-being" can be interpreted plainly, based on the words' ordinary meaning. According to Merriam Webster, an "emergency" is "an unforeseen combination of circumstances or the resulting state that calls for immediate action"; "an urgent need for assistance or relief." *Emergency*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/emergency (last visited Dec. 20, 2020). And the qualifying language in Sections 4(b)(7) and 11(g)(2)(C)—i.e., "posing a significant risk to the well-being"—makes clear Congress' aim was to bypass time-consuming rulemaking procedures in situations where a species is at such risk that its "well-being," its very existence, is *at risk* of being lost (or functionally lost) imminently before the ESA's regular listing process can conclude and the species is finally protected under the Act.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

P A G E | **6**

That is the situation here, where over half the plants have been wiped out in the last few months, and whatever the cause, there is no substantiated reason to conclude that it is certain not to recur.

The Service's stated reasons for asserting there is no emergency facing Tiehm's buckwheat under the circumstances simply lack a factual or even rational basis. First, the Service claims the species is not at risk because "some of the affected plants" have recently sprouted. ECF No. 29-5, ¶ 3. The Service does not deny the species' steep decline, yet it provides no basis for concluding that recent "sprouting" will ameliorate the urgent threat to the species. Indeed, the Service admits "it is still unclear what the long-term impact from this event" will be. *Id.* ¶ 4.

The Service also suggests that the threat is no longer "ongoing," but this also does not mean the cause of the recent incidents has ceased completely. Both herbivory and human causes are episodic in nature. Even if one believed that the recent incidents have ceased, given the ambiguity as to the causal factors, the threat remains.[3] And, even if Defendants are correct, that still would not eliminate the other existential threat to the species—the proposed lithium mine— which is slated to receive permits by the end of 2021. ECF No. 17-1 ¶ 15; ECF No. 17-2 at 1.

While acceding the mine is slated for final permitting by the end of 2021, the Service claims that there is no emergency because it will issue the 12-month finding by September 30,

---

[3]  If the recent decline of 40-50 percent of Tiehm's buckwheat is the result of squirrels, it is "the first documentation of herbivory on the species." ECF No. 29-5 at ¶ 7. If, however, these incidents are attributable to actions of individual people—a prospect that, as Defendants' own information indicates, seems as plausible as squirrel herbivory, Supp. Decl. Naomi Fraga at ¶¶ 5-7 ("Supp. Decl. Fraga")—then under either scenario, the threat remains, even if not actively "ongoing" at any particular moment. ECF No. 29-5 at ¶ 7 ("the significance of herbivory to the species depends not only on its frequency and intensity" and "whether damaged plants can recover and survive—a question that remains unanswered"); *see also* ECF No. 29-1 at ¶¶ 9-10 (BLM field manager describing no or minimal "ongoing" herbivory but "still ongoing" evidence of "human foot traffic" on two bi-weekly site visits).

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

2021—meaning, a few weeks or months "before the mine is permitted." ECF No. 29-5, ¶ 4. Yet, the 12-month finding is only the second of three listing decisions that the Service must make before the species is finally afforded substantive protection under the ESA. ECF No. 11 ¶¶ 32-38. Only if the 12-month finding is positive—i.e., the Service finds and publishes its "warranted" conclusion along with a proposed listing rule, and commences a public comment period, *id*. ¶ 34—will the agency proceed to the third and final decision in the listing process. *Id*. ¶ 35. Accordingly, under Defendants' schedule, any final rule protecting Tiehm's buckwheat will not be effective until late fall 2022, *id*. ¶ 35, at the soonest—a year after mine approval. ECF No. 17-2 at 1; ECF No. 17-1 at ¶ 15; ECF No. 29-5 ¶ 4.[4] Notably, Defendants are not offering to suspend or slow down the current schedule for mine permitting.

Perhaps most important, the conclusion that there is no emergency facing Tiehm's buckwheat is directly undermined by the Service's own admissions that the recent destruction incidents are cause for alarm, as the agency "placed the 12-month finding in our highest priority category." ECF No. 17-22 at 3 (citing "recent events" and "potential threats *to the species*,

---

[4]  The Service points out that even if not yet protected under the ESA, the species' precarious status will nevertheless be considered under the National Environmental Policy Act ("NEPA"), ECF No. 29-5, ¶ 4, but while also important, NEPA analysis cannot substitute for the rigorous analysis and substantive protections provided under the ESA, *cf. Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1032 (9th Cir. 2005)—especially the prohibition found in Section 9(a)(2), 16 U.S.C. § 1539(a)(2), against the destruction or removal of endangered plants from Federal public lands. *See* 85 Fed. Reg. 43,352 (July 16, 2020) (NEPA "is a procedural statute" that "does not alter any substantive environmental law or regulation such as . . . the [ESA]"); 40 C.F.R. § 1502.24(a) (agencies "shall" prepare environmental analyses under NEPA "concurrent and integrated with" analyses under other laws including the ESA, "[t]o the fullest possible extent"). Analysis of the mine's potential impacts to Tiehm's buckwheat, including interagency consultation and development of conservation measures to ensure the species is not driven extinct by the mine, 16 U.S.C. § 1536(a)(2), must take place under the ESA prior to making any decision about whether to permit the proposed mine.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

including their *imminence*") (emphasis added); *see also* ECF No. 29-5 ¶ 3 (describing response to incidents including "moving forward with an aggressive listing determination timeline"). Thus, Plaintiffs were within their right to invoke the emergency "notice" provision and immediately proceed to Court for relief for the Service's admitted legal violation.

D.  <u>Plaintiff's Requested 30-Day Timeline for the Overdue 12-Month Finding Will Effectuate the ESA's Conservation Purpose, Whereas Defendants' 10-Month Timeline May Come After the Species' Extinction and Depends on a Series of Unnecessary Bureaucratic Steps That Exceed the Statutory Timeline of 12 Months.</u>

Defendants' reasons for asking this Court to impose a deadline of September 30, 2021 are based on a complete misapprehension that Plaintiff is *not* pursuing an ESA citizen suit claim but, rather, only an APA Section 706(1) claim, 5 U.S.C. § 706(1)—to which the "*TRAC*" factors for assessing unreasonable delay apply. Since this is a citizen-suit claim based on an admitted violation of a mandatory duty, those factors are immaterial. *See infra* at II.A.

In any case, Defendants' justifications for extensive delay are patently unreasonable and do not withstand minimal scrutiny. For instance, the Service offers that a September 30, 2021 deadline for the 12-month finding will be made "before the mine is permitted," by the end of 2021. ECF No. 29-5 ¶ 4.[5] In essence, the Service is claiming that a 12-month finding—not the *final* listing rule that would extend all the substantive protections of the ESA to the wildflower, *see e.g. Fed'n of Fly Fishers v. Daley*, 131 F. Supp. 2d 1158, 1163 (N.D. Cal. 2000) (quoting S. Rep. No. 418, 97th Cong., 2d Sess., 10 (1982))—issued mere weeks or months before the final mine permitting decision, will somehow result in adequate, timely ESA protection for the species. This is not the case. *See supra* at 8, note 4.

_____

[5]  Defendants appear to presume that Ioneer's lithium mine will be permitted, despite pending environmental reviews and public comment opportunities that have yet to be conducted.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

P A G E | **9**

The Service's proposal is too little, too late, and stands in stark contrast with Congress' intent that the ESA's listing timelines be strictly enforced in order to effectuate the Act's fundamental purpose of species *conservation*, as courts have repeatedly recognized. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002) ("*Badgley*") ("'Congress from the outset recognized that timeliness in the listing process is essential.'") (quoting *Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, 839 (9th Cir. 2001)); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1395 (9th Cir. 1995) (noting that Congress established time limits in Section 4 of the ESA to speed up listing process so more species could be listed); *see also Am. Lands All. v. Norton*, 242 F. Supp. 2d 1, 10 (D.D.C. 2003) (Section 4's timelines reflect Congress' intention to "expedite the decision-making process and to ensure prompt action in determining the status of the many species which may require the protections of the Act'"); *Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 10 (D.D.C. 2003) (noting that in contrast to process for petitions seeking revisions to critical habitat, "Congress mandated specific actions and a time frame for listing or de-listing a species" reflecting that listing actions are "more important"). Strict listing timelines are the very reason Congress amended the ESA in 1982, to ensure that species are afforded the protections they are entitled to *before they are at risk of worldwide extinction*.

Accordingly, to effectuate the purpose underlying Section 4's mandatory, nondiscretionary timelines, courts order injunctive relief to require the Service to make overdue ESA listing determinations by a date certain according to a reasonableness standard. ECF No. 17 at 14-16; *see Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 U.S. Dist. LEXIS 34753, *14 (N.D. Cal. Apr. 28, 2008) (ordering final listing determination for polar bear within 17 days of order); *Marbled Murrelet v. Lujan*, No. C91-522WDR, 1992 U.S. Dist. LEXIS 14645, *3 (W.D. Wash. Sept. 15, 1992) (ordering final listing determination for marbled

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

murrelet three days after the order); *Env't Def. Ctr. v. Babbitt*, 73 F.3d 867, 869 (9th Cir. 1995)

(ordering Secretary to comply with Section 4 statutory deadline at a "reasonable time after

appropriated funds are made available"); *Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739, 749

(W.D. Tex. 1997) (after finding that the Secretary's actions were arbitrary and capricious,

remanding for a listing determination within 30 days from the date of the order).

   The Service rationalizes its September 30, 2021 deadline on the basis that "some of the

affected plants have . . . sprouted new leaves from remnant intact plant stems," but as explained

above, this cannot pretend to claim that both existential threats to the plant—the mine and the

ongoing threat of destruction—have been neutralized. *See supra* at 8. Perhaps reasonable minds

can differ about the cause of the recent incidents, whether the result of ravenous squirrels (or

other herbivorous mammals) or people. *See e.g.* Suppl. Decl. Fraga ¶¶ 4-8 (noting for a variety of

reasons results from the eDNA report should be approached with caution and a definitive

conclusion should not be made; the report would not pass peer-review process). Yet the agencies

cannot claim that herbivory is no longer "ongoing," and indeed they offer no specific facts to

support the insinuation that the threat has ceased entirely, a glaring omission given they are

purportedly conducting "biweekly site visits" and monitoring cameras yet somehow failed to

document additional destruction and illegal off-road vehicles that occurred sometime between

September 12, 2020 and November 16, 2020. *Compare* ECF No. 17-1 ¶¶ 55-56, 58, 78-84, Figs.

13-21 *to* ECF No. 29-1 ¶¶ 5, 8-10 (documenting only six "biweekly" visits to the site).[6]

   Last, the Service's proposed September 30, 2021 deadline should not be adopted, because

---

[6] Oddly, BLM states that it placed and collected footage from game cameras trained on the site
on multiple occasions, ECF No. 29-1 ¶¶ 5, 7-10, but Defendants provide no information as to
what information, if anything, that footage may reveal about the causes of the destruction
incidents—and apparently, BLM has since removed the cameras. *Id*. ¶ 10.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY
JUDGMENT

it would depend on the agency's completion of a series of completely unnecessary bureaucratic steps. ECF No. 29-5 ¶¶ 8-15. The steps the Service described are neither contemplated—let alone required—by the ESA or any other legal authority. *Id*. Moreover, if accurately described by the Service, from beginning to end this process will take *longer* than the Service's requested timeline of 10 months, and possibly even longer than the statutory timeline of 12 months. *Id*. at ¶¶ 10, 14.[7] The Court should not accept the Service's invitation to "embrace an interpretation of the ESA in which listings could admittedly take years," as "it is apparent that Congress passed the 1982 amendments for the very purpose of curtailing the process." *Badgley*, 309 F.3d at 1175 (quoting *Ctr. for Biological Diversity*, 254 F.3d at 839-40). Where, as here, the "foot-dragging efforts of a delinquent Agency" could determine the fate of the species, the Court must be called upon to effectuate the ESA's purpose of species conservation. *Cf. Wildwest Inst. v. Kurth*, 855 F.3d 995, 1008 (9th Cir. 2017) ("Congress explained that, '[i]n cases challenging the Secretary's claim of inability to propose an otherwise warranted petitioned action, the court will, in essence, be called on to separate justifications grounded in the purposes of the Act from the foot-dragging efforts of a delinquent Agency.'") (quoting H.R. Rep. 97-835, at 22 (1982) (Conf. Rep.)).

Whether Tiehm's buckwheat warrants protection should not be a close question by any stretch of the imagination, even if the precise factors behind its precipitous decline may not be fully understood. But the responsible agencies cannot hide behind an elaborate bureaucratic process bearing no relation to the ESA's requirements or mandatory timelines to avoid reaching this seemingly inevitable conclusion. When measured against the ESA's dictates, it is a

---

[7]  According to the Service, the process at a minimum takes at least 11 to 12 months, at least six months for the "SSA," two to three months for peer review, minimum three months for headquarters policy review, and then once cleared for publication an unknown number of weeks before published in the Federal Register. ECF No. 29-5 ¶¶ 10, 14.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

straightforward determination that can—and must—be reached *now*, based on the best scientific information available now, which is all that is required. 16 U.S.C. § 1533(b)(1)(A) (instructing the Service to make listing determinations "solely on the basis of the best scientific and commercial data available"); *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1147 (9th Cir. 2007) ("the Service may not ignore evidence simply because it falls short of absolute scientific certainty"); *Defs. of Wildlife v. Babbitt*, 958 F. Supp. 670, 679 (D.D.C. 1997) ("The ESA mandates that the decision on listing a species be made solely on the basis of the best scientific data available, but there was no requirement that the evidence be conclusive.") (internal citations and quotations omitted). In contrast with the Service's proposed process, 30 days is the timeline that would be consistent with the ESA and the purpose underlying the Act's mandatory timelines for listing petition determinations.[8]

    E.   The *TRAC* <u>Factors Are Irrelevant To Assessing Proper Injunctive Relief To Remedy the Service's Liability Under Section 4 and the ESA Foreclosed Courts Usual Equitable Discretion in Granting This Relief.</u>

Without support, Defendants invite the Court to apply the six factors set forth in *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"), in fashioning injunctive relief for the Service's ESA citizen-suit violation – *i.e.*, "the effect of expediting delayed action on agency activities of a higher or competing priority." ECF No. 29 at 26. Yet the *TRAC* factors do not apply here. *TRAC* factors pertain to claims of unreasonable agency delay under Section 706(1) of the APA, 5 U.S.C. § 706(1) and writs of mandamus, to

---

[8]  While it should have been "initiated" months ago, well before the Service published the 90-Day Finding, based on the Service's own 11-12 month timeline for completing a 12-month finding (ECF No. 29-5 ¶¶ 10, 14), it appears that the Service initiated the process only within the past few months. *Id.* ¶ 3 (noting that as of October 27, 2020, weeks after the statutory deadline had passed that the most progress the Service had made on its 12-month finding was that it had "begun the 12-month listing determination process"); ECF No. 17-22 at 2 (same).

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

determine whether federal agencies are liable for delaying or missing statutory deadlines or directives. *TRAC*, 750 F.2d at 76-77, 79; 28 U.S.C. § 1651(a); *Id.* § 1361. *TRAC* factors do not apply to the ESA's strictly construed timelines or remedies, *see supra* at II.D. at 11-12, particularly where, as here, Defendants have conceded liability. For this same reason, Defendants cite to *In re Barr Lab'ys, Inc.*, 930 F.2d 72 (D.C. Cir. 1991) is unpersuasive. *Id.* at 74 (discussing equitable relief in the context of granting a writ of mandamus). *See also, e.g., Badgley*, 309 F.3d at 1177 n.11 (rejecting the application of *TRAC* factors to relief for overdue ESA listing determinations, as such determinations involve specific deadlines "for performance by [the Service], where no balancing of factors is required or permitted," whereas *TRAC* factors concern "whether an agency has committed unreasonable delay in the absence of a firm deadline").

Moreover, given the strict statutory deadline for a 12-month finding, the appropriate test under the APA would not be unreasonable delay, but whether the agency has "unlawfully withheld" agency action. *Cf. Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999) ("When an entity governed by the APA fails to comply with a *statutorily imposed absolute deadline*, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act.") (emphasis added).

In urging the Court to apply the *TRAC* factors, ECF No. 29 at 24-27, Defendants conspicuously fail to cite a single case that involves the ESA. *See* ECF No. 29 at 24-27. However, unlike the cases Defendants cite,

> the Supreme Court held that the clear objectives and language of Congress in passing the ESA removed the traditional discretion of courts in balancing the equities before awarding injunctive relief. 'Congress has spoken in the plainest of words, making it abundantly clear that the balance [of equities] has been struck in favor of affording endangered species the highest of priorities.'

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

P A G E | **14**

*Badgley*, 309 F.3d at 1177-78 (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978)).[9]

Where, as here, the Service admittedly claims it already *has* placed the 12-month finding for

Tiehm's buckwheat in its "highest-priority of actions," *see e.g.* ECF No. 29-5 ¶ 3, there is no

reasonable argument that setting a 30-day deadline somehow amounts to "assuming command

over an agency's choice of priorities," ECF No. 29 at 26—rather, the injunction is fully

consistent with the agency's own stated priorities.

In any event, Defendants' claims about a lack of resources are vague and unsubstantiated.

*See, e.g., Biodiversity Legal Found. v. Babbitt*, No. CA 96-1156 (JLG), 1997 U.S. Dist. LEXIS

23007, at *9 (D.D.C. Mar. 26, 1997) (blaming the failure to issue nondiscretionary Section 4

listing determination on "budget moratorium that ended almost one year ago [wa]s insufficient to

relieve [Defendants] of their statutory obligations under the ESA"); *Marbled Murrelet v. Babbitt*,

918 F. Supp. 318, 322 (W.D. Wash. 1996) (Defendants' "reliance on vague, unsupported

allegations about estimated expenses" did not relieve them of order for overdue listing

determination).[10]  Defendants have offered no specific facts for a meaningful inquiry into their

purported lack of resources that prevent them from issuing the 12-month finding for 10 months

for the wildflower. Nor have they disputed, as Plaintiffs showed, ESA listing determinations for

---

[9]  Supreme Court cases have reinforced the holding of *TVA*, "further solidif[ying] the rule that, in the context of the ESA, 'Congress [has] foreclosed the exercise of the usual discretion possessed by a court of equity.'" *Id.* at 1177 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)); *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 543 n.9 (1987).

[10]  In 2003, the Service "estimate[d] that approximately $153 million would be needed to address the current backlog of listing and critical habitat obligations." *See* Suppl. Decl. Noah Greenwald ¶ 9, Exh. 29 (*Defenders of Wildlife et al v. Norton et al*, Civ. No. 02-00165-M-DWM, *Defendants' Response to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents* (Apr. 28, 2003); *W. Watersheds*, 2012 U.S. LEXIS 13771, at *44-45 (noting that "[w]hile the FWS itself has estimated that $153 million is necessary to address the backlog, the DOI routinely requests less than $9 million") (citing Goble et al. (2006) 16, 31).

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY
JUDGMENT

the California-Nevada Region have ground nearly to a halt. *E.g.* ECF No.17-29 ¶¶ 8-9.

Inasmuch the agency's resources for ESA listing determinations are constrained, this is a problem of the Service's own creation, the logical consequence of "limited . . . budget requests" and "spending caps on listing activities." *See W. Watersheds Project v. U.S. Fish & Wildlife Serv.*, No. 4:10-CV-229-BLW, 2012 U.S. Dist. LEXIS 13771, at *44-45 (D. Idaho Feb. 2, 2012) ("*W. Watersheds*") (emphasis added) (citing *Ctr. for Biological Diversity v. Norton*, 163 F. Supp. 2d 1297, 1300 (D.N.M. 2001) (discussing DOI's admission that "the listing program [budget] is not proposed at a level that would allow the [FWS] to meet all of the [ESA's] requirements and deadlines"); J. Michael Scott et al., *By the Numbers, in The Endangered Species Act at Thirty* 16, 31 (Dale D. Goble et al. eds., 2006) ("Goble et al. (2006)") (discussing DOI's request that Congress impose spending caps on its ESA duties). As Judge Lynn Winmill of the U.S. District Court for the District of Idaho found, the agency's "financial pinch is not being imposed entirely from the outside; much of it is coming from inside the agency's own home." *W. Watersheds Project*, 2012 U.S. LEXIS 13771, at *44-45 (noting that "in each year from 1998 to 2003, [the Interior Department] asked Congress to cap spending on listing" and "[w]hile the [Service] itself has estimated that $153 million is necessary to address the backlog, [Interior] routinely requests less than $9 million"). As explained by the Center's endangered species director, since the *W. Watersheds* decision in 2012, the Service has continued to request caps, and has even gone further in recent years, sought cuts in its listing budgets—requests which, fortunately, Congress has thus far rejected. *See* Suppl. Decl. Noah Greenwald, ¶¶ 4-6 ("Suppl. Decl. Greenwald").

The wildflower cannot be forced to bear the consequences of the Service's continued efforts, as Judge Winmill described, to "'evade the law simply by failing to appropriate enough money to comply with it.'" *W. Watersheds*, 2012 U.S. Dist. LEXIS 13771, at *44 (quoting *Ctr. for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1180 (D. Ariz. 2003)) (rejecting FWS

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

argument that it could not comply with listing duties because it was underfunded); *see also id.* ("Put another way, '[t]he solution of being over-obligated and under-funded rests with Congress, and not with the Court.'") (quoting *Butte Env't Council v. White*, 145 F. Supp. 2d 1180, 1185 (E.D. Cal. 2001)). If it is, Tiehm's buckwheat will all but cease to exist.

III.   THE COURT SHOULD ORDER THE SERVICE TO MAKE A LAWFUL EMERGENCY LISTING DETERMINATION WITHIN 14 DAYS (CLAIM 1).

The Service does not dispute the material facts or even address the Center's argument that the Service acted arbitrarily and capriciously, and/or abused its discretion when, in response to the Center's petition for emergency rulemaking, the agency refused to provide emergency listing protections to Tiehm's buckwheat. *Compare* ECF No. 17 at 16-21 *to* ECF No. 29 at 27-30. Instead, the Service hangs its hat on its flawed argument that the Center has *no right* under the APA whatsoever either to petition the Service for an emergency listing and receive a response or to obtain judicial review of the Service's refusal to do so. ECF No. 29 at 27-30. There is no such barrier to granting the Center's requested relief. *See* ECF No. 28 at 16-20; ECF No. 17 at 24.[11]

A.   The APA Provides the Means To Petition for an Emergency Rulemaking and to Obtain Judicial Review of Any Arbitrary and Capricious Decision in Response.

The issues are whether the Center has a right under the APA to petition the Service for an emergency listing rule protecting Tiehm's buckwheat and an enforceable right to a response within a reasonable period of time, and whether the Center has a right under the APA to a judicial review of the agency's response (or failure to respond). The Service fails to bootstrap its

_____

[11] Plaintiff has not raised a claim challenging Defendants' position that there is no right to petition for emergency listing under the ESA. The Center seeks redress for the Service's refusal to respond as required under the APA.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

arguments about the purported absence of a party's emergency-listing-rule petition rights under the ESA, and cannot overcome the Center's showing that indeed, the APA affords both a right to petition for an emergency listing rule and a right to judicial review of the Service's arbitrary-and-capricious refusal to act.  *See*, *e.g*., 551(13) (defining "agency action" as "the whole or a part of an agency rule, . . .  relief, or the equivalent or denial thereof, or failure to act"); *id*. § 702("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

As a general matter, the Supreme Court has made crystal-clear that the legal avenues for citizen enforcement specified in the ESA do *not,* by negative inference, *"*supplant" those otherwise provided in the APA. *Bennett v. Spear*, 520 U.S. 154, 175 (1997) (holding that a claim against the Service that could not be brought under the ESA citizen suit provision could nevertheless be pursued under the APA because "[n]o one contends (and it would not be maintainable) that the causes of action against the [Service] set forth in the ESA's citizen-suit provision are exclusive, supplanting those provided by the APA. Especially against that backdrop, Defendants' interpretation of Section 4(b)(7) of the ESA as somehow precluding the Center's ability to seek recourse, under the APA's petition and judicial review process, for species that are literally on the brink of extinction, cannot withstand a close analysis of the ESA's plain language, its legislative history, or its overriding purpose. As Plaintiff has shown and consistent with the Supreme Court's admonition in *Bennett*, the fact that Congress did not provide for a petition right in the ESA cannot be read to displace such a right under the APA's general grant of petition rights for rulemaking and/or ancillary matters. Section 4(B)(7) discusses rulemaking from 5 U.S.C. § 553 in the context of an *issued rule* and process for *issuing* such a rule, not about the right to petition for such a rule in the first instance, under APA Section 553(e) and 43 C.F.R. §§ 14.2-14.3. *See also* ECF No. 28 at 16-18.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

Thus, 16 U.S.C. § 1533(b)(7) is clearly intended to protect species by exempting emergency rulemaking from all of the procedural requirements, such as notice and comment, ordinarily required in APA rulemakings, 5 U.S.C. § 553(b)-(d), and regular ESA listings, 16 U.S.C. § 1533(b)(4). *See also Las Vegas v. Lujan*, 891 F.2d 927, 932 (D.C. Cir. 1989) (explaining that the ESA "contemplates a somewhat less rigorous process of investigation and explanation for emergency regulations than for formal rulemaking"). But the provision does not somehow eviscerate the APA's right to petition for such rulemaking altogether—indeed it cannot, certainly not without doing so expressly, as Section 559 of the APA makes clear. 5 U.S.C. § 559 (emphasis added) (a "[s]ubsequent statute may not be held to supersede or modify this subchapter. . . *except to the extent that it does so expressly*"); *see also* Attorney General's Manual on the Admin. Proc. Act 122, 139 (1973) ("Nothing in this Act shall be held to diminish the constitutional rights of any person . . .  No subsequent legislation shall be held to supersede or modify the provisions of this Act except to the extent that such legislation shall do so expressly.). Defendants cannot be correct, because if, in (b)(7), Congress was trying to abridge the public's First Amendment right to petition the government in the ESA—a right that extends to all departments of the government and is "one of the most precious of the liberties safeguarded by the Bill of Rights"—Congress would have expressly said so. U.S. Const. Amend. I; *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (internal citations omitted).

Nor can Defendants explain how their proffered interpretation—i.e., that (b)(7) somehow rolls back APA petition rights under 553(e) and 43 C.F.R. §§ 14.2 - 14.3, even without expressly saying so—can possibly be deemed consistent with (b)(7)'s policy objective. That objective is to provide a mechanism to *bypass* Section 4's and the APA's default timelines for rulemakings when necessary to protect a species in an emergency situation, and for the protections to remain in place while the usual ESA and APA rulemaking procedures are completed. *See Las Vegas*,

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

P A G E | **19**

891 F.2d at 932-35 (D.C. Cir. 1989). As Plaintiff showed and Defendants simply did not refute, Plaintiff's interpretation is the only one that advances (or bears any relationship to) the ESA's plain language as well as its fundamental conservation purpose, as reflected in the ESA's legislative history, structure, and purpose. ECF No. 28 at 16-18; H. Agreement to the Conf. Rep. on S. 1981, Endangered Species Act of 1973 at 482; H. Consideration and Passage of S. 10229, as Amended, Endangered Species Act Amendments at 555; *id*. at 558 ("[i]t is . . . incongruous to promulgate emergency regulations and then have to wait 90 days to implement them.").

Regardless, Defendants all but ignore Plaintiff's additional point that, even if one were to adopt Defendants' counterintuitive interpretation of Section 4(b)(7), Plaintiff would nevertheless have a right to request an emergency rule under Section 555(b). ECF No. 28 at 3, 11-14, 16-17. This provision confers a broad right to an interested party to submit a "request" (or petition) to an agency, including a request in connection with an agency proceeding, rulemaking, or other request for "relief," *id*. § 551(13), and to receive a "conclu[sion of the] matter" "within a reasonable time" and "[p]rompt notice" of a "denial in whole or in part" with a brief statement of the grounds for denial. 5 U.S.C. § 555(b), (e); 43 C.F.R. § 14.3 (same); 5 U.S.C. § 551(5), (12) ("agency proceeding" includes "rule making.").

In addition, while Defendants attempt to split hairs between Plaintiff's ability to petition for an emergency listing rule under the APA and its ability to obtain judicial review under the APA, ECF No. 29 n. 18, this is a distinction without a difference. The same principles that afford Plaintiff a right to petition the Service under the APA provide Plaintiff an avenue to judicial review of the action (or inaction) the agency takes in response. As Defendants themselves acknowledge, pursuant to the APA, 5 U.S.C. § 706(1), potential plaintiffs obtain relief for agency actions that have been unlawfully withheld or unreasonably delayed, if no other adequate remedy is available. ECF No. 29 at 2. As explained by the Supreme Court in *Bennett*, "the APA

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

by its terms independently authorizes review only when 'there is no other adequate remedy in court,'" 520 U.S. at 161-62 (quoting 5 U.S.C. § 704). The Court reaffirmed these principles in the 2019 decision in *Weyerhaeuser Co. & U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361 (2018) ("*Weyerhaeuser*"). Accordingly, regardless of whether the Center can obtain judicial review and relief under the ESA citizen suit provision, Defendants' contention that the Court is foreclosed from reviewing the Service's response (or lack thereof) to the Center's APA petition is impossible to square with Supreme Court precedent.

The Service tries to resurrect *WildEarth Guardians v. Kempthorne*, 592 F. Supp. 2d 18 (D.D.C. 2008) ("*Kempthorne*"), which predates *Weyerhaeuser*, *see* ECF No. 17 at 20, n.6, ECF No. 28 at 18, but this Court should reject this invitation, too. In *Weyerhaeuser*, the Supreme Court examined another provision of the ESA, Section 4(b)(2), which confers broad agency discretion to exclude areas designated as a species' "critical habitat." The Court made clear this did not preclude an aggrieved party from obtaining judicial review—for example, on the basis that the agency decision is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Weyerhaeuser*, 139 S. Ct. at 370 ("To give effect to § 706(2)(A) and to honor the presumption of review, the Supreme Court has read the exception in 5 U.S.C.S. § 701(a)(2) quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.").

Thus, a party who is aggrieved by the agency's ultimate exercise of that discretion may still ask a court, as the Center is doing here, to determine whether "the agency did not appropriately consider all of the relevant factors that the statute sets forth to guide the agency in the exercise of its discretion," *id*. at 371—and if so, to seek reasonable "relief" for such arbitrary-and-capricious agency decisionmaking accordingly. *Id*. at 370 (observing the Court has "long applied a strong presumption favoring judicial review of administrative action"). Thus, although

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

the Service may have some discretion to decide when to emergency list an endangered species under Section 4(b)(7), that discretion does not prevent this Court's review of whether the Service has acted arbitrarily under the circumstances, including by "not appropriately consider[ing] all of the relevant factors" regarding whether there is an "emergency posing a significant risk to the well-being" of Tiehm's buckwheat. 16 U.S.C. § 1533(b)(7).[12]

Defendants' ignore *Weyerhaeuser* entirely, and fail to put forward any rationale for why this Court should also ignore that squarely applicable, binding precedent and instead adopt *Kempthorne's* discredited premise that emergency listing under the ESA was committed to agency discretion by law and unreviewable by a court. *Kempthorne*, 592 F. Supp. 2d at 24; *Weyerhaeuser*, 139 S. Ct. at 370 (noting the "few cases" in which the Court applied the § 701(a)(2) exception "involved agency decisions that courts have traditionally regarded as unreviewable," citing "allocation of funds from a lump-sum appropriation" or "a decision not to reconsider a final action" as examples) (internal citations omitted).

      B.  <u>Ruling for the Center in This Case Will Not Result in an Endless Parade of Emergency Listing Petitions Under the APA, but This Would Not Affect Plaintiff's APA Rights Anyway</u>.

In a last attempt to avoid all review of their decisions when it comes to species like Tiehm's buckwheat, Defendants invent a parade of horribles that, they claim, would result from correctly applying the authorities as explained above and in Plaintiff's opening brief. Defendants have not provided one iota of evidence to support their overblown description of the consequences of affirming Plaintiff's APA rights here—but, this cannot provide any basis to

---

[12] Section 4 of the ESA is not broad Congressional mandate. It imposes obligations on the Service to list and designate critical habitat for endangered and threatened species, among other discrete duties. *Id.* § 1533.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

adopt their interpretation in any event.  ECF No. 29 at 28. Yet it bears noting that doing so would be contrary to the ESA's purpose and scope. 16 U.S.C. § 1531; H. Consideration and Passage of H.R. 37, With Amendments Endangered and Threatened Species Conservation Act of 1973 at 204 (Sept. 18, 1973) ("it is far wiser to take [] preventative steps to keep a species . . . from reaching this critical point [of being dangerously close to total extinction] than to stand idly by until emergency action is necessary which may not in every case be successful").[13]

The Service's response and handling of such petitions is ultimately no high bar, as the agency must simply comply with the ESA's relaxed requirements for emergency listing and the APA, like 5 U.S.C. § 555(b), (e), and make reasoned decisions. *Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1, 6 (D.C. Cir. 1987); *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; 16 U.S.C. § 1533(b)(7). So long as it does so, parties will be disincentivized to consume resources by pursuing meritless claims in court. Indeed, out of 11 overdue 12-month findings that the Service identified as part of its workload, ECF No. 29-5 at pgs. 8, 10, only three—Tiehm's buckwheat, Dixie Valley toad, Lassics lupine—included an APA petition for emergency listing as well as the ESA listing petition, and only one, Tiehm's buckwheat, has resulted in litigation. *See* Supp. Decl Greenwald ¶ 8. The scenario the Service portrays, in addition to having no relevance to the Center's rights under the APA, simply has no basis in fact.

---

[13] In any event, unlike in *Kempthorne* where the listing petition sought emergency listing for 475 species of plants and animals in a single region, 592 F. Supp. 2d at 22, here the Center is asking for a single species to be afforded this urgent protection while the ordinary listing process is being undertaken, and it is protection that is unquestionably pressing now that half (or more) of its global population has been destroyed and/or removed in a matter of months. *See e.g.* ECF No. 17-7 at 1; ECF No. 17-2 at 1; ECF No. 17-4 at 2, 12, 19, 22; ECF No. 17-1 ¶¶ 15-16, 18-19, 21, 23-28, 33, 43, 46-50, 55-56, 58, 61-62, 77-81, 83, Figs. 1-2, 4, 7-21; ECF No. 17-27 ¶¶ 6-7, 13-15, 18, 20-23, 27-28, 40-46, Figs. 4-5, 9; ECF No. 27-28 ¶¶ 7, 14, 21, 23.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thus, the Service has a discrete and mandatory duty under the APA to furnish, within a reasonable time, a non-arbitrary response to the Center's emergency listing petition under Sections 553(e) (and its implementing regulations) and/or 555(b) of the APA. *See also* 43 C.F.R. §§ 14.2 - 14.3. The Center has the ability under the APA's jurisdictional provisions to seek judicial review of this determination, as it has done here, with the ESA's provisions for emergency listings and the APA's provisions for rulemakings and/or ancillary matters anchoring this Courts' judicial review. *Animal Legal Def. Fund v. Vilsack*, 237 F. Supp. 3d 15, 21 (D.D.C. 2017); *Cmty. Voice v. EPA (In re Cmty. Voice)*, 878 F.3d 779, 784-85 (9th Cir. 2017). As the Service has not upheld these duties in its plain mistake of the law, it is proper for this Court's review and for granting the Center's requested relief. 5 U.S.C. § 551(13); *Bennett*, 520 U.S. at 178; *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 984-87 (9th Cir. 2006) ("'[i]t is the effect of the action and not its label that must be considered;'" "finality is to be interpreted 'in a pragmatic way.'") (internal citations and quotations omitted).

C. Defendants Cannot Rationalize Their Arbitrary Decision Rejecting Immediate Protection of Tiehm's Buckwheat Through an Emergency Listing Rule.

The Service's explanations for refusing to protect Tiehm's buckwheat as endangered under an emergency listing rule—especially given the agency's unlawful delay in the standard listing process—lack any relationship to common sense, as Plaintiff has shown. *See supra* at II.C; ECF 29 at 19-20. The Service finds undue encouragement from finding that "*some* of the affected plants" have "sprouted," and ruminates that whatever the precise cause(s) for the recent incidents may be—squirrels, or people with tools and off-road vehicles—the threat has passed. Yet again, the Service cannot deny that half (or more) of the wildflower's entire global population has been lost in a matter of months, and that the wildflower continues to suffer the ongoing threat of destruction and an imminent extinction threat. ECF No. 29-1, ¶ 3; ECF No. 29-2 at 2; ECF No. 17-22 at 1-2; ECF No. 17-1 ¶¶ 78-80, 83, Figs. 12-21; ECF No. 17-27 ¶¶ 41-45,

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

Figs. 4-5, 9.  If emergency listing is not appropriate here, it is difficult to fathom when it would be. The Service's refusal to invoke its emergency listing authority is all the more egregious due to the Service's refusal to comply with the statutory timetable for the ordinary listing process, setting the stage for the potential that the species may be extinct before it obtains [any] ESA protection at all. *Id.*; Supp. Decl. Fraga, ¶ 9. Their approach is akin to an emergency room doctor standing by and watching as a patient's artery bleeds instead of taking action that would stop the bleeding and repair the severed artery.

The Service cannot have it both ways. It cannot, on the one hand, refuse to afford necessary emergency protection to the species while on the other hand, refuse to commit to a 12-month finding on a meaningful timeline that would have any chance of stopping and reversing that trend. The emergency listing authority in Section 4(b)(7) and the listing petition timelines in Section 4(b)(3)(B) are intended to work together to effectuate the ESA's conservation purpose. *See Las Vegas*, 891 F.2d at 932 (explaining that "Congress amended the [ESA] in 1988, specifically directing the [FWS] to 'make prompt use of the authority under [16 U.S.C. § 1533(b)(7)] to *prevent a significant risk* to the well-being of any . . . species'" for which listing has been deemed warranted) (emphasis in original). The Court should not sanction Defendants' negligent disregard for Tiehm's buckwheat as well their duties under the ESA.

In summary, for all the reasons set forth in Plaintiff's motion for summary judgment, response to Defendants' motion to dismiss, and supporting materials, the Service has arbitrarily, capriciously, and abused its discretion in refusing to extend emergency protections to this species. Accordingly, this Court should grant the Center's requested relief. ECF No. 25 at 24.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.   BLM HAS UNREASONABLY DELAYED TAKING NON-DISCRETIONARY,
DISCRETE ACTION AS THE APA REQUIRES AND SHOULD BE ORDERED TO
RESPOND TO THE CENTER'S PETITION ABOUT ITS EFFORTS TO PROTECT
TIEHM'S BUCKWHEAT.

The parties agree that BLM has failed to conclude the Center's APA BLM Petition with a substantive response and that BLM has no intention of taking such action (in the absence of a Court order). ECF No. 25 at 8; ECF No. 29 at 8-10. As a result, there is no final action for the Court to review under APA Section 706(2)(A), and the sole issue is whether BLM has unreasonably delayed providing the Center prompt notice of its conclusion of the Center's BLM Petition under the APA—a harm that this Court can redress by granting the Center's requested relief. ECF No. 17 at 21-24; *see also* ECF No. 28 at 10-15; 5 U.S.C. § 555(b); 5 U.S.C. § 706(1).

Despite BLM's attempt to diminish 5 U.S.C. § 555(b) to a mere shadow of itself and to evade the discrete and mandatory duties it sets forth, Section 555(b) could not be clearer; this provision has broad and independent applicability. When an interested person presents an agency with a matter in connection with an agency function, the agency must conclude that matter within a reasonable amount of time. *In re Cmty. Voice*, 878 F.3d at 784-85 (internal quotations and citations omitted). "[BLM] has a clear duty to act under the APA [and] conclude a matter presented to it within a reasonable time." *Animal Legal Def. Fund*, 237 F. Supp. 3d at 21 (internal quotation and citation omitted).

BLM never engages, much less acknowledges, the breadth of 555(b), even though its plain language and the case law indicates that it is not limited to agency proceedings, or otherwise hemmed into narrow fact patterns. ECF No. 29 at 8-10. But ignoring inconvenient truths does not make them disappear, and here, that truth is that 5 U.S.C. § 555(b) applies to agency functions, which "encompass[es] all forms of agency action." *Animal Legal Def. Fund*, 237 F. Supp. 3d at 21. And this is also the only way to interpret the statute that is consistent with Congressional intent and the Center's First Amendment right to petition the government. S. Rep.

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

No. 79-752, at 205 (1945); *supra* at 20.

Here, the agency function is BLM's responsibility to manage the public lands where Tiehm's buckwheat is found for "the protection, restoration, enhancement, and expansion of habitat of species identified as threatened, endangered, or on the Nevada BLM Sensitive Species and Special Status Species list." ECF No. 29-1 ¶ 2. It is in connection with this core BLM agency function that the Center submitted its petition. ECF No. 17-10 at 1.

Although the Center's Petition and other letters the Center has sent to BLM have expressed the Center's ideas of what BLM should and could do to take meaningful on-the-ground action to protect, mitigate, and minimize harm to the species, BLM misses the boat by focusing on this and trying to re-cast this claim as one asking the Court to order BLM to carry out specific management actions. *See e.g.* ECF No. 29 at 10-15. This is a significant distinguishing factor between this case and *Block v. SEC*, 50 F.3d 1078, 1080 (D.C. Cir. 1995), as the Center, unlike the plaintiffs in *Block*, is simply seeking an order directing BLM to *respond* to the Center's BLM APA Petition by a date certain, since BLM has failed to conclude the matter within a "reasonable amount of time," 5 U.S.C. § 555(b), and to disclose how (if at all) it will protect Tiehm's buckwheat from further harm in light of its management obligations.  5 U.S.C. § 555(b).[14] Whether BLM ultimately concedes that it must do something meaningful for the

---

[14] As far as D.C. Circuit precedent is concerned, the more pertinent case is *In Re Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) ("*In re Am. Rivers*"). There, the court held that the petitioners could pursue an unreasonable delay claim challenging the Federal Energy Regulatory Commission's ("FERC") failure to respond to a request for certain action under the ESA. *Id.* at 414. The Court relied on the same APA provisions, explaining that "[u]nder the APA a federal agency is obligated to 'conclude a matter' presented to it 'within a reasonable time,' and a reviewing court may 'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* at 418 (citation omitted). In response to FERC's argument that it was not obligated to take the action sought, the D.C. Circuit explained this was entirely "beside the point" because

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

species—given that the agency's own policies require it to prevent the need for listing species that occur on BLM land—is not the issue here. It is the agency's plain mistake of the law.[15]

By focusing singularly on whether the Center has any rights under the APA (ECF No. 29 at 8-10), BLM backs itself into a corner, as it does not (and cannot) argue that it has not unreasonably delayed in concluding this matter. BLM thus attempts yet again to recast the Center's claim as "BLM unreasonably delayed [in] exercising its management discretion," ECF No. 29 at 13-14. This is a transparent mistake with fatal consequences as BLM's entire unreasonable delay argument (ECF No. 29 at 14-15) is predicated on this misrepresentation and thus it entirely neglects to address unreasonableness as it is tied to its discrete and non-discretionary duty to conclude the Center's petition within a reasonable amount of time.

Here, there is no excuse for BLM's unreasonable delay in concluding the Center's APA Petition, much less any convincing argument that could be made under the so-called *TRAC* factors. *NRDC v. EPA (In re NRDC)*, 956 F.3d 1134, 1139 (9th Cir. 2020) (quoting *In re Am. Rivers*, 372 F.3d at 419); ECF No. 17 at 22-23. The Ninth Circuit has recognized that the most important factor of *TRAC*, is the first: the rule of reason. *In re NRDC*, 956 F.3d at 1138-39. And

---

"FERC is required *under the APA* to respond to the [] petition" and the agency's "contentions go not to the reasonableness of FERC's delay but to the merits of the petition itself," which was not before the court. *Id*. at 419 (emphasis in original). That is exactly the situation here.

[15] That said, the Court has observed that FLPMA "Section 1782(c) is mandatory as to the object to be achieved"—i.e., preventing unnecessary and undue degradation—even if "it leaves BLM a great deal of discretion in deciding how to achieve it." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004). BLM stretches *Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217 (9th Cir. 2011), beyond recognition, to mean BLM need not take *any* action *whatsoever* to protect this wildflower on lands under its management authority. But BLM cannot plausibly claim that it may stand idly by while an entire species is driven extinct under its watch. *Min. Pol'y Ctr. v. Norton*, 292 F. Supp. 2d 30, 33 (D.D.C. 2003) (characterizing BLM's obligation to take any action necessary to prevent unnecessary or undue degradation as "[t]he heart of FLPMA").

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

where, as here, BLM's delay is tied to its erroneous belief that the Center does not have *any* rights under the APA or that the Center's petition demands this Court order specific management actions, there is nothing reasonable about it failing to swiftly conclude the Center's petition.

More than three months have passed and BLM still has yet to conclude the Center's Petition, despite all parties agreeing on the dire circumstances of the wildflower, and the loss of "somewhere between 40 and 50 percent of the native population of Tiehm's buckwheat plants had been destroyed." ECF No. 17 at 21-23; ECF No. 29-1 ¶¶ 3, 5; ECF No. 29-2 at 2. There is no reasonable argument that this species is not in immediate grave risk of its health and welfare. *Pub. Citizen v. Heckler*, 602 F. Supp. 611, 614 (1985). Over the course of these three months, ongoing destruction and/or removal has continued to occur, including incidents similar in nature to what was observed in early September, in addition to illegal off-road vehicle use that has run over plants and torn up habitat in subpopulation 1. *See e.g.* ECF No. 17-1 ¶¶ 55-56, 58, 77-80, 83, Figs. 13-21; ECF No. 17-27 ¶¶ 27-28, 40-45, Figs. 4-5, 9; ECF No. 17-15 at 1-8 (documenting ongoing significant alterations to Tiehm's buckwheat subpopulations 1 and 2, 4, 5, and 6 between September 13, 2020 and September 23, 2020); ECF No. 17-23 at 1-9 (documenting between September 23, 2020 and October 31, 2020 subpopulation 1 suffered damage from unauthorized off-highway vehicle use, fresh holes and increased damage and destruction of plants in multiple subpopulations, including areas that had previously been significantly less disturbed (subpopulation 6A), and more well-defined social trails to subpopulation 6); ECF No. 17-24 at 3-4 (documenting further unauthorized off-road vehicle use in subpopulation 1 that occurred between October 31, 2020 and November 15, 2020).[16]

---

[16] Concerningly, although not pertinent to redressing BLM's violation of the Center's APA rights, BLM has gone out to the site a handful of times, made conclusory observations as to the

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

1    Whether a self-serving omission or careless oversight, despite BLM's contention that it is

2  conducting bi-weekly site visits, these material facts do not disappear nor become irrelevant to

3  BLM's delay being unreasonable.  With a species' existence at stake, there is no straight-faced

4  argument that months of delay to conclude the Center's petition is reasonable.  *Pub. Citizen v.*

5  *Heckler*, 602 F. Supp. 611, 614 (1985); *Pub. Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d

6  1150, 1157-58 (D.C. Cir. 1983).

7    Accordingly, this Court should grant the Center's requested relief and order that BLM

8  conclude the Center's BLM APA Petition by a date certain.  ECF No. 17 at 24-25.

9                                   **CONCLUSION**

10    The Center respectfully requests that the Court grant the Center's Motion for Summary

11  Judgment, deny Defendants' Cross-Motion, and grant the Center's requested relief.

12

13  Dated December 21, 2020                      Respectfully submitted,

14                                               */s/Amy R. Atwood*
                                                 _____
15                                               Amy R. Atwood (SBO 060407) (*pro hac vice*)
                                                 **Center for Biological Diversity**
16                                               P.O. Box 11374
                                                 Portland, OR 97211
17                                               Phone: (971) 717-6401
                                                 atwood@biologicaldiversity.org
18

19

20

21  cause(s) of the destruction that appears to have biased any investigation it undertook, and held
    one meeting over a month after being made aware of the destruction and/or removal, yet has
22  taken zero on-the-ground action to prevent further destruction of plants. ECF No. 29-1 at ¶¶ 4-
    10; ECF No. 29-3 at 2; ECF No. 29-4 at 2. Even with the Center continuing to document
23  ongoing removal and/or destruction (*e.g.* ECF No. 17-1 55-56, 58, 77-80, 83, Figs. 13-21; ECF
    No. 17-27 ¶¶ 27-28, 40-45, Figs. 4-5, 9; ECF No. 17-28 ¶¶ 21-22; ECF No. 17-23 at 2; ECF
24  17-24 at 3-4), including off-road vehicle damage to subpopulation 1, nowhere does the
    information BLM provided actually safe-guard the wildflower from harm. BLM's failure to
25  address the ongoing nature of the destruction and in finding similar observations is deeply
    worrying for the plight of this species, underscoring the need for prompt Service listing action.

26
    PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
27  JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY
    JUDGMENT
28                                                          P A G E | **30**

Allison N. Melton (SBC 45088) (*pro hac vice*)
**Center for Biological Diversity**
P.O. Box 3024
Crested Butte, CO 81224
Phone: (970) 309-2008
amelton@biologicaldiversity.org

Christopher W. Mixson, Esq. (SBN 10685)
Don Springmeyer, Esq. (SBN 1021)
**Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP**
3556 East Russell Road
Las Vegas, NV  89120
Phone: (702) 341-5200
cmixson@wrslawyers.com
dspringmeyer@wrslawyers.com
*Attorneys for Plaintiff*

PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND RESPONSE TO DEFENDANTS' CROSS MOTION FOR SUMMARY
JUDGMENT