1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7   CENTER FOR BIOLOGICAL DIVERSITY,       Case No. 2:20-CV-1812 JCM (NJK)

8                            Plaintiff(s),              ORDER

9        v.

10  DAVID BERNHARDT,

11                          Defendant(s).

12

13       Presently before the court is plaintiff Center for Biological Diversity's motion for

14  summary judgment.  (ECF Nos. 17, 22).   Defendants David Bernhardt, Douglas Furtado,

15  Aurelia Skipwith, U.S. Bureau of Land Management, and U.S. Fish and Wildlife Service filed a

16  response, (ECF No. 29), to which plaintiff replied, (ECF No. 31).

17       Also before the court is defendants' cross-motion for summary judgment.  (ECF No. 34).

18  Plaintiff responded.  (ECF No. 32).

19       Finally before this court is defendants' motion to dismiss.  (ECF Nos. 20, 25).  Plaintiff

20  filed a response, (ECF No. 28), to which defendants replied, (ECF No. 30).

21  **I.     Facts**

22       Plaintiff Center for Biological Diversity seeks to "prevent the extinction of Tiehm's

23  buckwheat." (ECF Nos. 1, 11).

24       Tiehm's buckwheat is a rare wildflower found only on "10 isolated acres of [Bureau of

25  Land Management ("BLM")] administered public lands in the Rhyolite Ridge area of the Silver

26  Peak Range mountains of western Nevada."  (ECF No. 17).  This mineral-rich region is the

27  prospective site for the "Rhyolite Ridge open-pit lithium/boron mine," which is under review for

28  federal permitting.  (ECF No. 11).

**James C. Mahan**
**U.S. District Judge**

1   BLM has already designated Tiehm's buckwheat as a "sensitive species," and the U.S.

2   Fish and Wildlife Service ("FWS") is considering it for listing under the Endangered Species Act

3   ("ESA").   (ECF No. 11); 90-Day Findings for Two Species, 85 Fed. Reg. 44,265, 44,267 (July

4   22, 2020) ("90-day finding"); *see also* Environmental Conservation Online System, Tiehm's

5   Buckwheat (*Eriogonum tiehmii*), https://ecos.fws.gov/ecp/species/4217 ("Listing Status: Under

6   Review").   The State of Nevada is also considering the buckwheat for listing as a "fully

7   protected species" under NRS 503.585.  (ECF No. 17).

8   On October 7, 2019, plaintiff formally petitioned the FWS to list Tiehm's buckwheat as

9   "endangered" under the ESA.  (ECF Nos. 17-4, 25-3).  That petition also requested the issuance

10   of an "emergency listing," under the Administrative Procedure Act ("APA") and ESA.   (*Id.*).

11   Over nine months later, on July 22, 2020, FWS published its "90-day finding" that

12   plaintiff's listing petition provided "substantial information" that protecting the buckwheat "may

13   be warranted."  85 Fed. Reg. at 44,267.  Yet FWS's finding declined plaintiff's request for an

14   emergency listing on the basis that the ESA does "not provide a right to petition the issuance of

15   such a rule."  *Id.* ("[T]herefore, we are evaluating this petition under the normal process of

16   determining if it presents substantial scientific or commercial information indicating that the

17   petitioned action may be warranted.").   FWS made no reference to the APA in making this

18   determination.. *Id.*

19   In September 2020, plaintiff and other groups observed significant disturbance among the

20   buckwheat's population, discovering that an estimated 40 percent of the species was impacted.

21   (ECF No. 11).   Plaintiff alleges that this destruction occurred "between July 5, 2020 and

22   September 11, 2020," and remains a danger to the plant's continued existence.  (*Id.*).

23   Although the exact cause of this destruction is uncertain,[1] the parties do not dispute the

24   ongoing and "alarming" threat to the species.  (*Id.*; *see also* ECF Nos. 25, 29).

25   ───────────────────

26   [1] Many theories exist as to the species' decline, including hungry ground squirrels and
human tampering.  (ECF No. 17-10 ("The buckwheats appear to have been dug up by small

27   shovels or spades. . . .We also want to note that for some number of months, Ioneer Corp. has
had a 'missing' poster for Tiehm's buckwheat posted in the general store in nearby Dyer, NV.
The poster offers a $5,000 reward for confirming a new population of Tiehm's buckwheat.");

28   ECF No. 29 ("The eDNA data collected as well as rodent incisor marks on the roots of the
damaged plants strongly supported the hypothesis that a rodent in genus Ammospermophilus

James C. Mahan
U.S. District Judge

1    On September 15, 2020, plaintiff sent a letter to FWS and BLM, documenting its recent

2    findings of destruction.  (ECF Nos. 17-8, 25-1).  The letter urged immediate action to preserve

3    the buckwheat, including a 12-month finding from FWS on plaintiff's October 2019 listing

4    petition.  (*Id.*).

5    Two days later, plaintiff renewed its listing petition under the APA through a letter to

6    FWS and BLM.  (ECF Nos. 17-9, 25-4).  That same day, plaintiff filed a separate petition to

7    BLM, requesting "immediate action consistent with its legal authorities and responsibilities

8    under [the Federal Land Policy and Management Act ("FLPMA")] and its sensitive species

9    policy to protect the Tiehm's buckwheat from any further harm and mitigate harm caused by the

10   recent destruction and/or removal."  (ECF Nos. 17-10, 25-2).

11   On September 22, 2020, FWS informed plaintiff that it had received its petition and was

12   evaluating next steps.  (ECF No. 17).  BLM also emailed plaintiff to confirm receipt of its

13   petition as well.  (*Id.*).

14   Plaintiff initiated the instant suit on September 29, 2020.  (ECF No. 1).  On October 8,

15   2020, plaintiff notified FWS of its intent to sue the agency for failure to issue a timely 12-month

16   finding on its listing petition—the notice stated plaintiff's intent to sue immediately due to the

17   emergency risk to the buckwheat as authorized under the ESA, 16 U.S.C. § 1540(g)(2)(C).  (ECF

18   No. 17-21).

19   On October 14, 2020, plaintiff amended its complaint, alleging three claims:

20   1)  *Claim One:* "The [FWS] Has Unreasonably Delayed in Concluding the Center's
21       Request to Emergency List the Tiehm's Buckwheat.

22       In the Alternative, [FWS] Has Arbitrarily and Capriciously and/or Abused its
23       Discretion in Concluding the Center's Request and Failing to Emergency List the
         Tiehm's Buckwheat."

24

25

26   was responsible for the damage to Tiehm's buckwheat, as reported in Dr. Grant's 2020 eDNA
27   Report.")).

28

2) *Claim Two:* "The [BLM] Has Unreasonably Delayed in Concluding the Center's Request that BLM Comply with its Protection Mandate and Sensitive Species Policy to Protect the Tiehm's Buckwheat from Destruction and/or Removal.

In the alternative, BLM Has Arbitrarily and Capriciously and/or Abused its Discretion in Concluding the Center Request and Failing to Comply with its Protection Mandate and Sensitive Species Policy to Protect the Tiehm's Buckwheat from Destruction and/or Removal."

3) *Claim Three:* "The [FWS] Has Violated the [ESA] by Failing to Make a Timely 12-Month Finding on the Center's Petition to List Tiehm's Buckwheat as Endangered or Threatened Under the ESA."

(ECF No. 11). Defendants David Bernhardt, Aurelia Skipwith, and Douglas Furtado are sued in their official capacities.[2] (*Id.*).

On October 27, 2020, FWS informed plaintiff that it was not "currently" planning to issue an emergency listing, reiterating its position that "the [ESA] does not provide a process to petition an emergency listing." (ECF No. 17-22). Furthermore, FWS did not intend on making another finding until the end of 2021. (*Id.*).

Plaintiff again surveyed the buckwheat on October 31, 2020, and November 16, 2020, to find that the species had continued to suffer destruction alongside "new off-highway vehicle impacts." (ECF Nos. 11, 17). Plaintiff then sent letters to FWS and BLM, apprising them of these recent findings and requesting steps to protect the species from imminent extinction—the current pace of destruction signaled that the species may "go extinct before its next bloom cycle (May/June 2020)." (ECF No. 17-23, 17-24).

The parties have now briefed the instant motions to dismiss and for summary judgment on an expedited schedule. (ECF Nos. 17, 20, 22, 24, 25, 29, 34). On January 21, 2021, the parties jointly informed this court that "discovery is not necessary . . . [and that] the parties do not anticipate disclosures or discovery in this case." (ECF No. 39).

_____

[2] David Bernhardt was Secretary of the U.S. Department of Interior until January 20, 2021. (ECF No. 25). Aurelia Skipwith was Director of U.S. Fish and Wildlife Service until January 19, 2021. (*Id.*). Douglas Furtado is Bureau of Land Management Battle Mountain District Manager. (*Id.*). "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. . . . Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d). In closing, this court will instruct the clerk's office to make the appropriate substitutions.

James C. Mahan
U.S. District Judge

- 4 -

II.     **Legal Standard**

      *A.  Motion to Dismiss*

      A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

      "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

      In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.  *Id.* at 678-79.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.  *Id.*

      Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct.  *Id.* at 678.

      When the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief."  *Id.* at 679.  When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

      The Ninth Circuit addressed the post-*Iqbal* pleading standard in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court held that:

James C. Mahan
U.S. District Judge

1
2
3
4
5

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

6

*Id.*

7

### B.   Motion for Summary Judgment

8
9
10
11
12

Rule 56 allows summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

13
14
15
16
17
18

The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).  However, to avoid summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

19
20
21
22
23
24
25

In determining summary judgment, the court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

26
27
28

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving

**James C. Mahan**
**U.S. District Judge**

- 6 -

party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the nonmovant must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**

Plaintiff requests defendants' prompt action on its petitions to protect Tiehm's buckwheat. (ECF Nos. 11, 17). Defendants argue that they are not legally mandated to take such action. (ECF Nos. 25, 29).

Relevant to this court's determination, plaintiff has submitted the following to defendant agencies:

    1)  a 30-day notice of petition to FWS and BLM on June 12, 2019 ("30-day notice"), (ECF No. 17-3);

2) an emergency listing petition to FWS under the ESA and APA on October 7, 2019 ("listing petition"), (ECF Nos. 17-4, 25-3);

3) a petition renewal letter to FWS on September 17, 2020 ("petition renewal"), (ECF Nos. 17-8, 25-1);

4) a petition letter to BLM under the FLPMA and APA on September 17, 2020 ("BLM petition"), (ECF Nos. 17-10, 25-2); and

5) a notice letter of intent to sue defendants on October 8, 2020 ("NOI"), (ECF No. 17-21).

To date, FWS has responded by issuing a 90-day finding in July 2020, 85 Fed. Reg. at 44,267, and sending a letter to plaintiff that it was not "currently" planning to issue an emergency listing in October 2020, (ECF No. 17-22).

Plaintiff's first and third claims are brought against FWS, while its second claim is brought against BLM. (ECF No. 11). As to plaintiff's first claim, the parties dispute whether private individuals can request emergency listing at all. (ECF No. 25). The second claim hinges on whether BLM has taken any final agency action. (*Id.*). Finally, the third claim turns on plaintiff's compliance with the ESA's notice requirements. (*Id.*).

This court grants defendants' motion to dismiss claims 1 and 2 but denies the motion for claim 3. (*Id.*). Upon review of the cross-motions for summary judgment, this court finds that plaintiff prevails on claim 3. (ECF Nos. 17, 29). Upon surviving defendants' procedural challenges, claim 3 rightfully requests action from FWS within 30 days of this order. (ECF No. 17). Each claim is discussed in turn.

A. *Claim One: FWS's delay in resolving plaintiff's petition for emergency listing.*

Plaintiff's first claim alleges that FWS has unreasonably delayed responding to its request for emergency listing—or alternatively, that the FWS abused its discretion, or was arbitrary and capricious, in failing to act on the request. (ECF No. 11). Plaintiff filed its listing petition and petition renewal pursuant to APA section 553(e) which allows an "interested person . . . to petition [an agency] for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e)

James C. Mahan
U.S. District Judge

Defendants move to dismiss, because there is no private right to petition FWS to emergency list a species; thus, FWS was not required to perform a discrete action in response to the petition. (ECF No. 25). This court agrees and dismisses plaintiff's first claim for lack of jurisdiction. *Flathead Irrigation Dist. v. Zinke*, 725 Fed. Appx. 507, 510 (9th Cir. 2018) (failure to assert a discrete action that an agency is required to take may result in claims being dismissed for lack of jurisdiction); Fed. R. Civ. P. 12(b)(1).

The plain language of the ESA's statutory emergency provision allows only the secretary of the interior ("Secretary")—and not private persons like plaintiff—to bypass the usual listing procedures in situations where an "emergency posing a significant risk to the well-being of any species of fish or wildlife or plants." 16 USC 1533(b)(7). This section expressly states that APA section 553 does not apply to the Secretary's decision to list a species on an emergency basis. *Id.*

Plaintiff argues that section 1533 "discusses rulemaking from 5 U.S.C. § 553 in the context of an issued rule and process for issuing a rule, not about petition rights to make a request for a rule in the first instance." (ECF No. 28).

However, the language of the provision is not so narrow. ESA section 1533 excludes the application of APA section 553. 16 U.S.C. § 1533(b)(7). This interpretation comports with other aspects of the statutory regime. *See Child.'s Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999) ("[W]e examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy."). The ESA contains detailed instructions on the petition process to add a species to the threatened or endangered lists.[3] 16 U.S.C. § 1533(b)(3)(A).

In contrast, the statute does not establish any similar procedures or detail for emergency petitions. *Id.* § 1533. Finally, this interpretation of the ESA aligns with practical policy

---

[3] ESA section 1533 expressly creates procedures for "an interested person under section 553(e) of Title 5" to submit a petition to list a species. 16 U.S.C. § 1533. Such procedural requirements include: "a 90-day time frame for the Secretary to act upon a petition; a standard of review that findings must be based on 'substantial scientific or commercial information indicating that the petitioned action may be warranted'; the requirement that the Secretary 'shall promptly commence a review of the status of the species' if it is found that the petitioned action may be warranted; and the requirement that each finding be published in the Federal Register.'" (ECF No. 25 (citing 16 U.S.C. § 1533)).

concerns: "[E]very petitioner would simply declare that their request constituted an emergency, thus forcing the agency to respond immediately regardless of the validity of the request or the existence of prior resource commitments or budgetary constraints. Congress knows how to fashion mandatory statutory language." *Institute for Wildlife Protection v. Norton*, 303 F Supp. 2d 1175, 1180 (W.D. Wash. 2003), *aff'd*, 149 Fed. Appx. 627 (9th Cir. 2005). This court declines to create new obligations for FWS, especially where its obligations are abundantly clear under the present statutory regime. *See Fund for Animals v. Hogan*, 428 F.3d 1059, 1063-64 (D.C. Cir. 2005).

FWS owes no duty to act or respond to plaintiff's requests for an emergency listing. *See id.* at 1180 ("Nothing about the language of this subsection indicates, either directly or indirectly, that the Congress intended that the option of emergency listing was non-discretionary with the Secretary."); *Am. Bird Conservancy v. Kempthorne*, No. 06-cv-2641 (JAP), 2007 WL 2972548, at *7 (D.N.J. Oct. 11, 2007) ("Congress intended to leave the decision as to whether to exercise the emergency rulemaking powers. . . to the discretion of the Secretary."). Claim 1 is dismissed because there is no justiciable claim for unreasonable delay. *Accord S.F. Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) ("EPA does not presently have a statutory duty to act. Therefore, there can be no unreasonable delay").

Plaintiff's alternate claim is dismissed as well because there was no final agency action subject to review under the APA. (ECF No. 11); *see* 5 U.S.C. § 551(13) (defining agency action as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). As discussed, plaintiff does not have a right to petition FWS for an emergency listing under the ESA, and thus its petitions fail to mandate action from the agency. FWS's responses to date were gratuitous—they were not "the consummation of the agency's decision-making process and determine rights or legal obligations that have legal force or expected immediate compliance." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014).

This court dismisses the first claim with prejudice.

. . .

James C. Mahan
U.S. District Judge

- 10 -

1          *B.   Claim Two: BLM's delay in resolving plaintiff's petition.*

2          Plaintiff alleges that BLM has unreasonably delayed its response to plaintiff's petition—

3   or alternatively, that BLM abused its discretion, or was arbitrary and capricious, in failing to act.

4   (ECF No. 11).   Plaintiff seeks an order directing BLM to respond to its petition by a "date

5   certain," (ECF No. 17), in light of BLM's failure to act within a "reasonable amount of time," 5

6   U.S.C. § 555(b).

7          Defendants argue that plaintiff fails to allege any ongoing agency proceeding or

8   adjudication that warrants action from BLM.  *See Block v. Securities and Exchange Commission*,

9   50 F.3d 1078 (D.C. Cir. 1995) (rejecting the notion that merely submitting a request to an agency

10  compels the agency's action).

11         APA section 555 permits interested persons to appear in an ongoing agency proceeding.

12  5 U.S.C. § 555(b) ("[A]n interested person may appear before an agency . . . in a proceeding . . .

13  in connection with an agency function."); *see Corp. v. LTV Corp.*, 496 U.S. 633, 635 (1990).

14  The section is "frequently invoked by third parties seeking to participate in agency proceedings."

15  *Animal Legal Def. Fund, Inc. v. Vilsack*, 237 F. Supp. 3d 15, 21 (D.D.C. 2017) (citing Jeffrey D.

16  Litwack, Guide to Federal Agency Adjudication 73 (2d ed. 2012)).   However, "[n]o court or

17  agency has ever suggested that § 555(b) grants any interested person a right to *compel* agency

18  action.  Rather, § 555(b) is universally understood to establish the right of an interested person to

19  *participate* in an on-going agency proceeding."  *Block*, 50 F.3d at 1085 (emphasis added)

20         Plaintiff does not identify any ongoing BLM proceedings relating to the buckwheat.

21  (ECF No. 11).   Courts have only read section 555 to compel an agency response when the

22  agency has failed to respond for an "egregious" period of time.  *See In re Nat. Res. Def. Council,*

23  *Inc.*, 956 F.3d 1134, 1140 (9th Cir. 2020) (finding unreasonable delay of more than ten years in

24  responding to a petition); *In re A Cmty. Voice*, 878 F.3d 779, 787 (9th Cir. 2017) (finding

25  unreasonable delay of eight years in acting upon a petition).

26         This court finds that BLM's response is not egregiously delayed.  (ECF No. 25).  Plaintiff

27  submitted the BLM petition on September 17, 2020, and filed the instant suit only twelve days

28  later.  (ECF No. 11).  Considering that timeline, it is fair to accept defendants' argument that

James C. Mahan
U.S. District Judge

1    "BLM reasonably continues to develop its plan, because management of this situation is an

2    iterative process that necessarily evolves in response to changing conditions such as decreases in

3    herbivory and increases in human foot traffic caused by unwanted public attention."  (ECF No.

4    25).

5         This court also finds that BLM has not "unreasonably delayed" its compliance with the

6    FLPMA, 43 U.S.C. § 1732, or the agency's Sensitive Status Species Management Manual—

7    neither of which contain a discrete mandate to the agency.  (ECF No. 11).

8         FLPMA section 1732 is not a "specific statutory command requiring" agency action.

9    *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004) (hereinafter "SUWA"); *see*

10   43 U.S.C. § 1732 (requiring BLM to "manage the public lands . . . in accordance with the land

11   use plans . . . when they are available"); 43 U.S.C. § 1782(c) (requiring BLM "to manage

12   [wilderness study areas] . . . in a manner so as not to impair the suitability of such areas for

13   preservation as wilderness").  Indeed, section 1732(b) "directs the BLM to achieve the broad

14   objectives of preventing unnecessary or undue degradation of public lands . . . [and] 'leaves [the]

15   BLM a great deal of discretion in deciding how to achieve' these objectives, because it does not

16   specify precisely how the BLM is to meet them."  *Gardner v. U.S. Bureau of Land Mgmt.,* 638

17   F.3d 1217, 1222 (9th Cir. 2011) (quoting *SUWA*, 542 U.S. at 66).   Here, BLM remains

18   comfortably within its discretion in deciding how best to comply with section 1732(b)'s broad

19   mandate.

20        Similarly, mere policy documents such as BLM's manual cannot serve as the basis for a

21   claim under APA section 706(1).  Plaintiff attempts to invoke the manual in demanding BLM's

22   protection of "BLM sensitive species" through specific actions.  (ECF No. 11).  However, the

23   manual only outlines broad objectives and duties—it does not dictate specific action.  U.S. Dep't

24   of Interior Bureau of Land Mgmt. Manual Transmittal 6840, (Special Status Species Mgmt. (Rel.

25   6-125 (12/12/2008)).

26        Here, BLM has acted within its discretion, and this court declines to oversee and dictate

27   the actions of the agency unless expressly required by law.  *SUWA*, 542 U.S. at 66 ("The

28   prospect of pervasive oversight by federal courts over the manner and pace of agency

James C. Mahan
U.S. District Judge

1    compliance with such congressional directives is not contemplated by the APA.").  Accordingly,

2    plaintiff's second claim is dismissed with prejudice.

3              *C.  Claim 3: FWS's failure to make its 12-month finding on plaintiff's petition.*

4              Finally, plaintiff alleges that FWS has failed to make its mandatory 12-month finding on

5    its petition to list the Tiehm's buckwheat as "endangered" or "threatened" under the ESA.  (ECF

6    No. 11).

7              ESA section 1540(g) permits "citizen suits" where "any person may commence a civil

8    suit on his own behalf" against "any person, including the United States and any other

9    governmental instrumentality or agency."  16 U.S.C. § 1540(g).

10             Plaintiff has appropriately brought its third claim under this provision, and not APA

11    section 706(1).  *See BremAir Disposal v. Cohen*, 156 F.3d 1002, 1004-05 (9th Cir. 1998)

12    (finding that federal courts lack jurisdiction over APA claims whenever Congress has provided

13    another adequate remedy).  Indeed, plaintiff's notice of intent to sue ("NOI") directly cites the

14    ESA's citizen suit provision as the basis for the immediate filing of its suit.  (ECF No. 11).  The

15    amended complaint fashions claim 3 as an ESA citizen suit and requests declaratory and

16    injunctive relief as provided under the statute.  (*Id.*).

17             However, citizen suits under ESA section 1540 require a 60-day written notice to the

18    Secretary "setting forth the reasons why an emergency is thought to exist with respect to

19    an endangered species or a threatened species in the State concerned."  16 U.S.C. § 1540(g)(2).

20    But this notice requirement includes an exception: "[n]o action may be commenced under

21    subparagraph (1)(C) of this section prior to sixty days after written notice has been given to

22    the Secretary; except that such action may be brought immediately after such notification in the

23    case of an action under this section respecting an emergency posing a significant risk to the well-

24    being of any species of fish or wildlife or plants."  *Id.* § 1540(g)(2)(C).

25             Defendants argue that plaintiff's claim should be dismissed for failure to comply with

26    this notice requirement.  (ECF No. 25).  Indeed, plaintiff provided a notice of intent to bring a

27    citizen suit on October 8, 2020, and amended its complaint to add claim 3 only six days later.

28    (ECF No. 11).

**James C. Mahan**
**U.S. District Judge**

This court finds that plaintiff plausibly alleges an "emergency posing a significant risk to the well-being of any species of fish or wildlife or plants" sufficient to bypass the notice requirement.  16 U.S.C. § 1540(g)(2)(C).  Plaintiff's pleadings demonstrate a well-founded concern for the species, and all parties acknowledge the steep decline in the buckwheat's population.  (ECF No. 11).

Defendants respond that plaintiff cannot label its own case as an emergency, especially when the agency has already "denied" its petition to emergency list and signaled its position that an emergency does not exist.  (ECF No. 25).  However, FWS's denial of emergency listing was mainly based on the agency's position that plaintiff has no right to ask for such listing.  (*Id.*).  Although this court agrees with defendants that plaintiff cannot request emergency listing, that does not mean that an emergency cannot exist in the context of the ESA's notice requirement.

Accordingly, plaintiff's third claim survives defendants' procedural challenges.  This court denies defendants' request to dismiss claim 3, and proceeds to examine the cross-motions for summary judgment on this claim.  (ECF No. 25).

Plaintiff moves for summary judgment on the question of FWS's failure to issue a timely 12-month finding.  (ECF No. 17).  Plaintiff requests that FWS submit "a proposed listing rule and proposed critical habitat rule for the species" within 30 days of the court's order for publication in the Federal Register.  (*Id.*).  To date, FWS has not done so.  *See* Environmental Conservation Online System, Tiehm's Buckwheat (*Eriogonum tiehmii*), https://ecos.fws.gov/ecp/species/4217 ("Listing Status: Under Review").

Defendants admit liability and do not "oppose a remedy directing [FWS] to make the 12-month finding by a reasonable and feasible date set by the Court."  (ECF No. 29).  However, FWS requests additional time to make its finding—until September 30, 2021, citing FWS's investigation of this matter and workload.  (*Id.*).  Courts may exercise their discretion to fashion a remedy by considering whether "the official involved . . . has in good faith employed the utmost diligence in discharging his statutory responsibilities." *Nat. Res. Def. Council v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1975).

James C. Mahan
U.S. District Judge

- 14 -

1    Upon review of defendants' obligations, this court finds no reason to grant additional

2  time for FWS to make its admittedly overdue finding.  *See Telecommunications Research Action*

3  *Center v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984).  This court does not do so "to punish a

4  delinquent agency." *Sierra Club v. Thomas*, 658 F. Supp. 165, 172 (N.D. Cal. 1987).  Instead,

5  defendants fail to persuasively argue that the 30-day deadline is impossible or infeasible.  *See*

6  *Am. Lung Ass'n v. Browner*, 884 F. Supp. 345, 347 (D. Ariz. 1994); *see also Ctr. for Biological*

7  *Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 U.S. Dist. LEXIS 34753, *14 (N.D. Cal.

8  Apr. 28, 2008) (ordering final listing determination for polar bear within 17 days of order);

9  *Marbled Murrelet v. Lujan*, No. C91-522WDR, 1992 U.S. Dist. LEXIS 14645, *3 (W.D. Wash.

10  Sept. 15, 1992) (ordering final listing determination for marbled murrelet three days after the

11  order).    Indeed, by the time of this order, more than enough time has passed for defendants' 12-

12  month finding on plaintiff's petition.  Plaintiff is correct to note that "[t]o effectuate the purpose

13  underlying Section 4's mandatory, nondiscretionary timelines, courts order injunctive relief to

14  require the Service to make overdue ESA listing determinations by a date certain according to a

15  reasonableness standard." (ECF No. 17).

16    Thus, this court grants summary judgment for plaintiff on claim 3.  By its own admission,

17  FWS has violated the ESA by failing to issue a timely 12-month finding as to whether it intends

18  to list Tiehm's buckwheat as an endangered species.    (ECF Nos. 17, 29).  FWS is ordered to

19  submit a proposed listing rule and proposed critical habitat rule for the species within 30 days of

20  this order for publication in the Federal Register.

21    Finally, in light of the change in administration, the clerk's office is instructed to

22  substitute Secretary of Interior Deb Haaland in place of David Bernhardt, and Acting Director of

23  FWS Martha Williams in place of Aurelia Skipwith.   A "[public] officer's successor is

24  automatically substituted as a party. Later proceedings should be in the substituted party's

25  name." Fed. R. Civ. P. 25(d) ("The court may order substitution at any time, but the absence of

26  such an order does not affect the substitution.").

27  . . .

28  . . .

James C. Mahan
U.S. District Judge

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for summary judgment (ECF No. 17) be, and the same hereby is, GRANTED in part and DENIED in part.  Summary judgment is granted for plaintiff on its third claim.

IT IS FURTHER ORDERED that defendants' cross-motion for summary judgment (ECF No. 34) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that defendants' motion to dismiss (ECF Nos. 20, 25) be, and the same hereby is, GRANTED in part and DENIED in part.  Plaintiff's first and second claims are dismissed with prejudice.

 IT IS FURTHER ORDERED that defendant FWS submit a proposed listing rule and proposed critical habitat rule for the species, within 30 days of this order, for publication in the Federal Register.

The clerk is ordered to substitute Deb Haaland in place of defendant David Bernhardt, and Martha Williams in place of defendant Aurelia Skipwith.

The clerk is further ordered to enter judgment and close the case accordingly.

DATED April 21, 2021.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 16 -